## PITTS *v.* MISSISSIPPI POWER & LIGHT CO. *et al.*

(Division B. Nov. 23, 1936. Suggestion of Error Overruled Dec. 7, 1936. Suggestion of Error Overruled Jan. 4, 1937.)

[170 So. 817. No. 32387.]

**Cooper & Thomas** and **B. B. Allen,** all of Indianola, for appellant.

Moody & Johnson, of Indianola and Green, Green & Jackson and A. M. Nelson, all of Jackson, for appellee, Mississippi Power & Light Company.

294

**Everett, Forman & Everett,** of Indianola, for appellee, Leland Ice & Cold Storage Company.

298

Argued orally by **Forrest Cooper** and **B. B. Allen,** for appellant, and by **J. M. Forman** and **Forrest B. Jackson,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee, the Mississippi Power & Light Company, hereinafter to be called the Power Company, in March and April, 1934, owned, and was operating, an ice plant in Indianola, Miss., and had owned and operated it for about ten years, except for the period from March 31, 1932, to March 31, 1933, when it was operated under a lease by appellant, Pitts. The principal business of appellee Power Company was that of furnishing electric current, but it had acquired this ice plant as a part of the same transaction when it purchased the electric light plant in Indianola. The ice plant had been operated at a loss year by year. There was a competing plant in Indianola owned by the appellee Leland Ice & Cold Storage Company, hereinafter to be called the Ice Com-

pany, and this plant also had been for several years operating at a loss. The fact that these two plants had been operating at a loss is undisputed, except by the opinion of appellant that two ice plants could make money in Indianola; but this does not amount in probative force to a substantial dispute, particularly when taken in connection with the fact admitted by appellant that he himself lost money in the year when he operated the Power Company's ice plant as lessee.

The Ice Company's plant in Indianola used internal combustion engines for its motive power. The appellant Power Company desired to dispose of its money-losing ice plant, and particularly desired to furnish electric power to the Ice Company's plant. For some time next before the dates first above mentioned, these two companies had been in negotiations, looking to an arrangement by which the objects mentioned might be accomplished; and in April, 1934, they finally reached an agreement which was carried into executed written contracts by which the Power Company conveyed to the Ice Company a small portion of the machinery then in the Power Company's ice plant, together with all the good will of the latter's ice business, with proper stipulations and limitations in that regard, and the Ice Company agreed to convert its plant into an electric plant as respects the power used, the electric current to be taken from the Power Company at the regular ice plant rates. The contracts were effective on May 1, 1934. The installations agreed upon were made, and the remainder of the machinery in the Power Company's ice plant was taken down and moved away.

On March 31, 1933, the Power Company had entered into a written contract with appellant for a period of one year, under which agreement appellant bound himself to buy, and the Power Company bound itself to sell, to appellant the output of the Power Company's ice plant, but not as an agent of the latter. The arrange-

ment was that the ice would be manufactured by the Power Company's ice plant, and placed in its storage room, the ice to become the property of appellant as soon as placed in the storage room. Appellant was to have the use of the storage room for keeping the ice until loaded into delivery trucks, and appellant was to have also the appurtenant facilities for loading the ice into the trucks. The ice was to be paid for by appellant at three dollars and seventy-five cents per ton, when and as placed in the storage room by the Power Company, and appellant was to furnish the trucks and all like facilities and all expenses thereof for the delivery of the ice to customers, in the doing of which diligence was required of appellant; the Power Company to have as its share of the operations only the three dollars and seventy-five cents per ton as delivered to the storage room, and the appellant all the profits of the sale to his customers, if there should be any profits.

On March 6, 1934, about three weeks before the expiration of the contract, appellant wrote to the division manager of the Power Company, having jurisdiction of that territory, that he desired to renew the contract for another year on the same basis. With the exception of the year heretofore mentioned when appellant operated the plant, appellant had worked under a similar contract with the Power Company for about seven years; and, hearing nothing in reply to the letter of March 6th, he supposed it to be the intention of the Power Company to continue the contract as suggested, especially in view of the fact that it was known to the Power Company, as the proof would indicate, that appellant was engaged in making the necessary preparations for the new ice season then about to open. But the renewal contract did not reach appellant on March 31st, whereupon within the next day or two he called the division manager by telephone, and the division manager stated to appellant that he had been busy with the Legislature

and that as soon as he could get them out of town he would draw the contract; and with this assurance appellant went on with the work receiving and paying for the ice and using the storage and delivery facilities as heretofore. The division manager said not a word to appellant about the negotiations then going on with the Ice Company, and appellant knew nothing of that until late in April, when he was informed that he had no contract and that after May 1st no more ice would be delivered to him by either company.

Appellant made efforts to procure ice elsewhere to furnish the trade which he had built up through the several years mentioned, but was unable to do so except at a haulage of such distance as to render it unprofitable. He then filed this suit against the Power Company and the Ice Company for his loss of profits for the year, March 31, 1934, to March 31, 1935, and for the statutory damages provided in the statutes on trusts and combines (Code 1930, sec. 3440), the declaration containing averments which sought to bring the transaction within the prohibition of those laws, the assertion being that the arrangement here between the two companies was designed to hinder or destroy, and did hinder or destroy, competition.

Upon the subject last mentioned, we deem it unnecessary to enter upon any lengthy discussion of the authorities. No law has intended to say, nor, within the permissible field of state action, could any statute say, that the owner of a private business which is steadily losing money shall be compelled to continue to operate that business in order to provide competition; for that would be to accomplish a noncompensated confiscation of private property for the public use, and there is no such allowance under our constitutional form of government. Even as to public service corporations, no law of the state nor any machinery operating thereunder can compel a losing business to continue at a loss, when it

has no franchise contract unperformed; and this may not be compelled as to a branch of the business which is losing money, although the profits of other branches of the same corporation may be making enough to cover the loss. Brooks-Scanlon Co. v. Railroad Commission, 251 U. S. 396, 40 S. Ct. 183, 64 L. Ed. 323.

As already stated, the Power Company, under the proof in this case, was steadily losing money on this ice plant. It was therefore beyond the power of the state or of any statute, directly or indirectly, to compel its continued operation. The Power Company had the right, so far as concerns the statutes dealing with competition, to shut it down and to allow it to disappear in decay; or it had the right to move it to another place. In either event, its existence as a competitor to the Ice Company plant would be at an end. Having thus the right to end its existence as a competitor, it follows that the Power Company had the incidental right to sell all or a part of its machinery, together with its good will, to the competitor, and the competitor had the corresponding right to buy; whence it follows as a legal consequence that no cause of action against either of them may have its foundation in the exercise by them of the stated right. It is a truism of the law that no man may be cast in any suit which has as its sole basis the doing of that which he had a lawful right to do. But it is equally obvious that the exercise of the stated privilege would not lessen the legal rights of any holder of a prior contract with one of the parties to the sale, which contract because of the sale, and as an incident thereto, remained unfulfilled; for there the basis of the right of action is not in the sale, but had its origin and foundation anterior thereto. On the other hand, the rights of such a contract holder will not thereby be enhanced or enlarged, as, for instance, by making the purchaser from the contractor also liable, unless the purchaser expressly assumed the contract, which was not done here.

The conclusion is that appellees are not liable to appellant in any respect or particular under the trust and combines statutes, and, the Ice Company not being liable to appellant under any contract with him, the peremptory instruction in favor of the Ice Company was properly granted. The remaining question is whether the Power Company is liable to appellant under the ordinary principles governing contracts as respects the unfulfilled portion of its alleged contract for the furnishing of ice to appellant from May 1, 1934, to March 31, 1935. As to this, the Power Company says, first, that the contract was not renewed for that period, and, second, assuming there was a renewal, that appellant failed to prove any damages because of the breach of the contract. Keeping in mind that not only the facts expressly testified to, but all inferences which may be reasonably and logically deduced therefrom, are to be accepted as true, in favor of the party against whom a peremptory instruction is requested, we are of the opinion that there is enough in the record to escape a peremptory charge upon the two issues just stated, and that those issues should have been submitted to the jury under proper instructions.

Affirmed as to the Ice Company; reversed and remanded as to the Power Company.