MISSISSIPPI POWER & LIGHT CO. *v.* PITTS.

(Division B. March 7, 1938.)

[179 So. 363. No. 33056.]

346

A. M. Nelson and **Green, Green & Jackson,** all of Jackson, and **Moody & Johnson,** of Indianola, for appellant.

Verdict should have been directed for appellant.

Cooper & Thomas, and **B. B. Allen,** all Indianola, for appellee.

**Griffith, Jr.**, delivered the opinion of the court.

When this case was before us on the former appeal, Pitts v. Mississippi P. & L. Co., 177 Miss. 288, 170 So. 817, it was urged by the power company that because Pitts had contended in the federal district court, on his motion to remand to the state court, that the action was one solely in tort and had procured the federal court to take that view, whereby the power company, as it is alleged, was deprived of its right to a trial in that court, he was estopped thereafter from urging in the state court any contract feature; that he had elected to proceed solely in tort.

We did not discuss those contentions in our former opinion, because it has so long been settled as to be beyond the range of further discussion that an order of remand by a federal court is not reviewable by a state court. Whether the federal court was in error or proceeded upon an erroneous view of the law in ordering the remand is a matter with which the state court can have no concern. When remanded, the state court proceeds with the case according to its own views of the law and the facts, without regard to what views the federal court had on remand, and without regard to what views of the law were urged by any of the parties on the motion to remand.

And it is equally well settled that, in order that a party shall be bound as by an election, he must actually have two inconsistent remedies. Here he had only one remedy, and his original mistaken conception that he had another and his mistaken pursuit of that other does not bar him from the one that he had. The doctrine of estoppel is not available, because that doctrine has reference to factual matters, and not to contentions upon

the law as applied to a given state of facts. There can be no estoppel where both parties were equally in possession of all the facts pertaining to the matter relied on as an estoppel, and the position taken in respect thereto involved solely a question of law. 21 C. J. p. 1231.

Precisely the same declaration was before the federal court when it made its order of remand that was before the state court when the case was subsequently tried in the latter court. In the trial in the state court, and here on appeal, Pitts continued to urge that his action was one in tort, but argued in the alternative that, if mistaken in this, he was at least entitled to recover a smaller sum in contract. Arguments in the alternative upon a given state of facts are permissible and are heard every day in all our courts, and, in the interest of the law, rightly so. And the courts decide according to any of the alternatives they think tenable, or may decide according to a view of the law not argued at all, or even upon a point or points which counsel for both sides contend has nothing to do with the case.

The trial court in the first trial was of the opinion that Pitts had no case either in tort or in contract, and gave a peremptory instruction against him. This court held on appeal that the trial court was correct so far as any tort feature of the case was concerned, but reversed and remanded as to the contract feature. It follows from what has already been said that upon the new trial Pitts was entitled to adjust his position to that allowed by the appellate court, regardless of his previous position, and to proceed with the case as the appellate court has allowed to be done. The whole matter may be summed up in the statement that it is the pleadings and the developed facts within the pleadings that courts are obliged to follow and to which the parties and counsel must be held; not arguments.

When the cause was remanded by us as a result of the first appeal, the mandate from this court was filed in

the circuit court on December 29, 1936. On January 9, 1937, Pitts filed in the circuit court his written motion to amend his declaration, and a copy of the motion and amendment was at the same time delivered to the power company. This amendment proposed to reduce the amount of the demand to $3,000. The circuit court was then in vacation; its next regular term convened on Monday, March 15, 1937. No order of the court allowing the amendment could be made until the court came on in term. On the third day of the term, and before the entry of the order allowing the amendment, the power company presented its petition and bond for removal to the federal court; notice of said application having been served the same day. The petition for removal was denied by the court.

Had the order allowing the amendment been entered prior to the filing of the petition to remove, clearly the latter would have been too late. The question is, therefore, whether the filing of the motion to amend and the service of the copy of the proposed amendment on the power company, before the presentation of the petition to remove, operates to the same effect as had the order allowing the amendment been entered prior to the petition to remove.

Inasmuch as a plaintiff has a right to reduce his demand at any time, this being a matter solely for him to to determine, the entry of the order allowing such a reduction in demand becomes purely formal; a matter merely of routine. The order so allowing is one which the court had no right to refuse; and hence, looking to substance rather than form, the declaration must be considered as having been amended so far as concerns the amount of the demand, as of the time when the written motion so proposing was filed in the circuit court. Waite v. Phoenix Ins. Co., C. C., 62 F. 769; Lake Erie R. Co. v. Huffman, 177 Ind. 126, 97 N. E. 434, Ann. Cas. 1914C, 1272; New England, etc., Co. v. Kelly-Spring-

field Tire Co., 214 App. Div. 58, 210 N. Y. S. 243. Hence the cause was not removable at the time the petition therefor was filed.

In the former appeal we held that sufficient facts were averred in the declaration to disclose a cause of action for breach of contract against the power company. These facts were sufficiently set out in the former opinion. On that point the former opinion became the law of the case. All that is left for inquiry now, is whether the proof has been sufficient to sustain the allegations on that point, and we are of the opinion, upon an examination of the present record, that this question must be answered in the affirmative.

The damages sought on the second trial were for the loss of profits in the ice business of Pitts for the year, March 31, 1934, to March 31, 1935. This was an established business, in a staple and not unusual line, and had been in existence in the same territory since 1928. In such a case the experiences of the previous years, when fairly well shown, have been generally considered as a sufficient basis upon which to support a judgment for loss of profits. The general rule in regard to such matters was summarized in Montgomery Ward & Co. v. Hutchinson, 173 Miss. 701, 707, 159 So. 862, 863, as follows: "Under our jurisprudence, the rule as to uncertain or speculative damages does not apply to uncertainty as to the amount of the profits which would have been derived, but to uncertainties or speculation as to whether (1) the loss of profits was the result of the wrong, and (2) whether any such profits would have been derived at all. . . . A party who has broken his contract cannot escape liability because of the difficulty in finding a perfect measure of damages. It is enough that the evidence furnishes sufficient data for an approximate estimate of the amount of the damages. . . . When a verdict is sustained by the reasonable probabilities growing out of the evidence, the judgment is not to

be defeated by showing that there is this or that or the other possibility which would point to a contrary verdict.''

It is shown by the record that for the year preceding the breach, that is, for 1933, Pitts bought from the power company 980 tons of ice at $3.75 per ton, and that he sold this ice at an average of $8 per ton, and that his expense was $1,692, which would leave him a profit of $2,473. His books showed a net profit for the year of $2,397.19. For the year 1932, he was working under a different contract, and, therefore, that year furnishes no applicable data. For the year 1931, Pitts preserved no books or records, and was unable to say whether his ice business, as apart from the coal and feed business, was or was not profitable. For the year 1930, his books showed a net profit of $3,637.14, and for 1929, of $4,225.36 in the ice division; but the details as to how these totals were arrived at are almost entirely missing from the record; and no data is given for 1928, except the general assertion that there was a profit that year.

The evidence for the years previous to 1933, and apart from that year, does not furnish an adequate basis for fixing an amount in a verdict, but does show that the business had been sufficiently successful to survive the years of general business depression; and, taken with all the other evidence, we think it can be safely said that, as a reasonable probability, the business for the year in issue would have been as good as the next previous year and that, therefore, a verdict of $2,500 would be justified.

The verdict was for $3,000. We think it probable, looking to the course of the examination and to the argument made here, which we may assume was made also before the jury, that the jury took into consideration and added to the amount of its verdict the $500 which Pitts testified he spent upon his equipment and other preparations for the year in issue. He would have had this same expense had the contract not been breached; whence it

follows that this item is not to be added to the recoverable damages. If Pitts will remit this $500, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded.

Affirmed, with remittitur.