# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00368-SCT

*DENNIS ADAMS AND RITA ADAMS*

*v.*

*U. S. HOMECRAFTERS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/1997 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ROBERT H. TYLER |
| ATTORNEY FOR APPELLEE: | JAMES B. GALLOWAY |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/03/1999 |
| MOTION FOR REHEARING FILED: | 6/17/99; Denied 09/02/99 |
| MANDATE ISSUED: | 09/09/99 |

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. U.S. Homecrafters, Inc. entered into a contract with Dennis and Rita Adams on April 19, 1991, to build the couple a house on their previously purchased property for $53,048.25. Construction began in late June or early July of 1991. Even before construction was completed, Mr. Adams noticed that whenever it rained, the front porch area of the house would flood. The couple moved into the home after completion of construction, in early August of 1991. Six to eight months after they moved in, Mr. Adams realized that the flooding problem still existed. He dug trenches and placed cement pilings in front of the house in an attempt to divert water around the house and prevent it from entering their home. After each rain, Mr. Adams had to dig out the ditches again. However, approximately three inches of water continued to accumulate on the front porch whenever there was a significant rain, causing the railing across the front porch to rot and fall down. The water came within a quarter of an inch of getting inside the front door.

¶2. Mr. Adams stated that both he and his wife contacted U.S. Homecrafters for eighteen months about the problem with no response. The Adamses finally hired an attorney. Once the Adamses' attorney contacted U.S. Homecrafters, Terry Loveless, a former officer for U.S. Homecrafters, offered to attempt to repair the drainage problem by cutting contoured ditches on the site and placing landscape timbers to prevent erosion, but Mr. Adams refused to allow him access to their property. Pamela Loveless, Terry Loveless's wife and a

former sales agent for U.S. Homecrafters, similarly testified that she proposed two solutions to Mrs. Adams to correct the drainage problem-use of landscape timbers or drainage ditches.

¶3. The Adamses filed suit against U.S. Homecrafters in the Circuit Court of Harrison County on January 28, 1994, seeking monetary damages for property damage and emotional distress due to the builder's breach of warranty. At trial, the Adamses' civil engineer expert, William Tully Rhodes, testified that U.S. Homecrafters had constructed the Adamses' home on a downhill slope "at grade," meaning that it was built at or near the ground surface, causing collection of water on the front porch. In Mr. Rhodes's opinion, building the house at grade was a violation of the builder's duty to exercise reasonable care.

¶4. Mr. Rhodes testified that the builder could have used a chain wall foundation during construction, added fill to raise the slab foundation, or graded or contoured the site to control storm water flow and prevent flooding of the front porch area. Mr. Loveless stated that he, rather than the Adamses, made the final decision to use a slab foundation rather than a chain wall. Mr. Rhodes saw no signs of contouring of the yard when he investigated the site in May of 1993, but Mr. Adams testified that at one point during construction he saw a bulldozer on the site scraping dirt away from the house. Mr. Rhodes stated that, even with contouring, the potential for soil erosion or silting would remain if no maintenance or landscaping were conducted.

¶5. Mr. Rhodes offered two proposals for correcting the drainage problem on the Adamses' home site, one costing $7,731, and the other costing $6,341. He also stated that Mr. Adams's attempts to alleviate the problem by digging trenches was reasonable under the circumstances. However, he did not recommend the use of trenches or ditches as a permanent solution from either a safety or an aesthetics standpoint. Mr. Rhodes's opinion was that landscape timbers would not have been an effective means of preventing the runoff from accumulating on the front porch.

¶6. Mr. Loveless testified that fill was in fact put underneath the slab foundation of the house at the beginning of construction, leaving it approximately two to three inches above grade. He also confirmed that the bulldozer Mr. Adams saw at the end of construction was contouring the site to divert water away from the front of the house. Mr. Loveless agreed that he "guessed" Mr. Adams's efforts were a reasonable means of attempting to prevent water from entering the couple's home. However, Mr. Loveless asserted that the flooding on the front porch was caused by the Adamses' failure to maintain the contour in the yard. He testified that the Adamses were responsible for seeding the yard to prevent runoff, because landscaping was not covered under the construction contract. He assumed that the Adamses knew that it was their responsibility, because "it's kind of common sense. . ." Mr. Adams, on the other hand, testified that U.S. Homecrafters never warned them about a potential drainage problem or the need for landscaping. Mrs. Adams corroborated this testimony.

¶7. The jury found in favor of the Adamses and awarded them damages in the amount of $6,731. Judge Terry entered judgment in favor of the Adamses in the amount of $6,731 on September 11, 1997. The Adamses appeal to this Court, assigning as error the trial court's denial of an instruction on damages for the reasonable value of Mr. Adams's labor in mitigating loss and for emotional distress.

## STATEMENT OF THE LAW

### I.

## WAS THE JURY PROPERLY INSTRUCTED ON HOW TO ASSESS DAMAGES FLOWING FORM THE CONSTRUCTION AND SALE OF A NEGLIGENTLY BUILT RESIDENCE?

¶8. At the close of all testimony, the Adamses offered Jury Instruction P-4 on the elements of damages. Element two of the instruction allowed the jury to award the Adamses damages for the reasonable value of their efforts in preventing further damage to their house, and element three allowed the jury to award damages for mental anguish. U.S. Homecrafters objected to elements two and three, and after hearing arguments from counsel, Judge Terry agreed to grant the instruction after removing those two elements.

### A. REASONABLE VALUE OF MITIGATION EFFORTS

¶9. The Adamses assert that the trial court erred in failing to instruct the jury on damages for the reasonable value of Mr. Adams's efforts in mitigating damages by digging and maintaining the ditches around their house. "[W]hile generally an injured person has the duty to use reasonable care, and to make reasonable effort to prevent or minimize the consequences of the wrong or injury, the rule is one of reason and that, where funds are necessary to meet the situation and the injured person is without the funds, he is excused from the effort." ***Tri-State Transit Co. v. Martin***, 181 Miss. 388, 396, 179 So. 349, 350 (1938) (*citing* ***North Am. Acc. Ins. Co. v. Henderson***, 180 Miss. 395, 404, 177 So. 528, 530 (1937)). "'As a general rule, a party is entitled to all legitimate expenses that he may show to have been incurred by him in an honest endeavor to reduce the damages flowing from or following the wrongful act.'" ***Vining v. Smith***, 213 Miss. 850, 862, 58 So. 2d 34, 38 (1952) (*quoting* 25 C.J.S. *Damages* § 49). "We agree with the general rule that a landowner can recover *reasonable* and *necessary* expenses incurred in an attempt to prevent future damages, so long as those expenses do not exceed the diminution in value the property would suffer if the preventive measures are not undertaken." ***City of Jackson v. Keane***, 502 So. 2d 1185, 1188 (Miss. 1987) (emphasis in original).

¶10. U.S. Homecrafters maintains that Mississippi case law does not support an award of damages for reasonable value of the plaintiff's own labor toward mitigation of loss. It asserts that Mississippi law on this subject only allows a plaintiff to be reimbursed for reasonable expenses incurred in mitigating loss. We disagree. As Judge Terry pointed out at trial, Mr. Adams should not be punished for doing the work himself rather than hiring someone else to do it just to run up expenses. Had Mr. Adams sat idly by and allowed the runoff water to enter his home, causing even more damage, U.S. Homecrafters no doubt would have insisted on a reduction in the amount of the jury verdict for failure to mitigate. *See* ***Hudson v. Farrish Gravel Co.***, 279 So. 2d 630, 634-35 (Miss. 1973) (*quoting* 15 Am. Jur. *Damages* § 40, at 439 (1938)) ("[I]t is the duty of one whose property is injured or threatened with injury to take reasonable precautions and to make reasonable expenditures to guard against or minimize such injury; and if he fails to do so, he cannot recover damages for any injuries which by the exercise of reasonable care he could have avoided."); ***Travelers Indem. Co. v. Rawson***, 222 So. 2d 131, 135 (Miss. 1969) (homeowners had duty within a reasonable length of time after original damage to roof to remedy the faulty situation and prevent subsequent damage). It would be unjust to deny Mr. Adams reimbursement for any proven value of his efforts to reduce the drainage problem through digging ditches around his house.

¶11. In ***Sites v. Moore***, 607 N.E.2d 1114, 1116 & 1119-20 (Ohio Ct. App. 1992), the Fourth District Court of Appeals of Ohio upheld an award for damages against the appellant contractor found to have breached a contract to remodel the appellees' house, including $9,821.86 to reimburse the appellees for their own labor and materials. In so holding, the Court stated:

In the case of a construction contract breached by the contractor, the proper measure of damages is "the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract." . . . *This logically includes the reasonable value of their own services employed as a substitute for appellant in his absence and breach of contract.* Had appellant not left the job with the majority of the contract monies, appellees could have hired other contractors to complete the work they did themselves. . . . *Given the circumstances and the condition of appellees' house, they exercised the only means available to remedy appellant's breach and mitigate their damages. Appellant must not be permitted to profit from appellees' completion of the very labor he contracted to complete.* If we denied appellees the value of their services, they would not be receiving that for which they contracted or its equivalent. . . .

*Id*. at 1119 (citations omitted) (emphasis added). *See also **Mississippi Transp. Comm'n v. Dewease***, 691 So. 2d 1007, 1012 (Miss. 1997) (wife performing nursing care for her husband rather than hiring professional nurses may be reimbursed under worker's compensation law). A plaintiff who performs mitigating repairs himself should be able to recover damages for the reasonable value of that time and labor just as he would be able to recover the cost of paying someone else to perform the task.

¶12. U.S. Homecrafters also asserts that the Adamses presented no evidence to prove that Mr. Adams's efforts actually mitigated their loss. However, "[t]he injured party is not precluded from recovery. . .to the extent that he has made reasonable but unsuccessful efforts to avoid loss." ***West Haven Sound Dev. Corp. v. City of West Haven***, 514 A.2d 734, 748 (Conn. 1986) (*quoting* Restatement (Second) of Contracts § 350(2) and cmt. h; § 347 cmt. c). Both Mr. Rhodes and Mr. Loveless agreed that Mr. Adams's efforts in digging trenches around his house were reasonable under the circumstances to prevent further damage. U.S. Homecrafters's argument on this point is therefore without merit.

¶13. However, the plaintiff still carries the burden of proving the amount of any damages with reasonable certainty:

Whatever the measure of damages, they may be recovered only where and to the extent that the evidence removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty. . . .This principle is of importance today, as we remember that a measure of speculation and conjecture attends even damage proof all would agree reasonably certain.

***Wall v. Swilley***, 562 So. 2d 1252, 1256 (Miss. 1990) (citations omitted). On the other hand,

[T]he plaintiff should not be deprived of its right to recover because of its inability to prove with absolute certainty the extent of the loss or the exact amount of money unjustly and illegally collected, and the law does not require such absolute accuracy of proof. . . . "The rule that damages, if uncertain, cannot be recovered, applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent a recovery."

***Billups Petroleum Co. v. Hardin's Bakeries Corp.***, 217 Miss. 24, 37, 63 So. 2d 543, 548 (1953) (*quoting **Linen Thread Co. v. Shaw***, 9 F.2d 17, 19 (1st Cir. 1925)) (citations omitted). *See also **Finkelberg v. Luckett***, 608 So. 2d 1214, 1222 n.4 (Miss. 1992) (*quoting* 25 C.J.S. *Damages* § 28) ("The rule as to the recovery of uncertain damages generally has been directed against uncertainty as to the fact or cause of damage rather than uncertainty as to the measure or extent."); ***Mississippi Power & Light***

*Co. v. Pitts*, 181 Miss. 344, 361, 179 So. 363, 366 (1938) (*quoting **Montgomery Ward & Co. v. Hutchinson***, 173 Miss. 701, 707, 159 So. 862, 863 (1935)) ("A party who has broken his contract cannot escape liability because of the difficulty in finding a perfect measure of damages. It is enough that the evidence furnishes sufficient data for an approximate estimate of the amount of the damages."); ***Hawkins Hardware Co. v. Crews***, 176 Miss. 434, 441, 169 So. 767, 769 (1936) ("When the cause of the damages is reasonably certain, recovery is not to be denied because the data in proof does not furnish a perfect measure thereof. . . ."); ***Shell Petroleum Corp. v. Yandell***, 172 Miss. 55, 67, 158 So. 787, 790 (1935) ("The damages are speculative when the cause is uncertain, not when the amount is uncertain.").

¶14. The Adamses' position is that Mr. Adams's testimony regarding the amount of time he spent on his efforts, combined with the testimony of Mr. Rhodes and Mr. Loveless that his attempts to mitigate damages were reasonable and appropriate under the circumstances, was sufficient evidence to support an award of damages for cost of mitigation. However, we agree with Judge Terry and U.S. Homecrafters that the Adamses failed to present sufficient proof of the value of Mr. Adams's time. Even if we were to accept the Adamses' argument that Mr. Adams should receive only minimum wage for his efforts, there were three levels of minimum wage during the five-year period during which Mr. Adams dug the ditches. *See* 29 U.S.C.A. § 206(a)(1) (1998). The jury also had insufficient evidence before it to calculate the amount of time he spent digging the ditches.

¶15. In the cases cited by the Adamses, *supra*, there was more of a factual basis to establish the amount of damages. ***Billups***, 217 Miss. at 30-31, 63 So. 2d at 545 (testimony of expert accountant based upon closely monitored test period and cost analysis of café operation sufficiently established amount of overcharge by bakery for bread delivered to café); ***Finkelberg***, 608 So. 2d at 1222 (uncontradicted competent proof of specific amount of legal expenses paid); ***Pitts***, 181 Miss. at 361-62, 179 So. at 366 (profits from previous years was sufficient evidence to prove loss of profits of established ice business); ***Crews***, 176 Miss. at 440-41, 169 So. at 769 (sufficient facts were presented to the jury, including item of $22 in damages to flour, to determine that the amount of damages to store inventory caused by leaking roof was not less than $75); ***Yandell***, 172 Miss. at 66, 158 So. at 790 (average of recorded gasoline sales from preceding months was sufficient evidence to establish damages for loss of commission due to breach of contract). *See also **Wall***, 562 So. 2d at 1256-58 (criticized poor proof of damages to home buyers caused by foundation problem, because no evidence was presented as to actual value of home or cost of repairs at time of purchase). *But see **Sites***, 607 N.E.2d at 1119 (allowed recovery for appellees' own labor despite lack of records of time spent, because appellees testified that they actually spent more time than that for which they sought damages, and charged only 40% of what appellant would have charged for the labor). The most specific testimony Mr. Adams gave as to the amount of time he spent digging out the ditches was that over the last five years he dug out the ditches "[a]t least 200 or more times" taking "[s]ometimes 30 minutes, sometimes an hour" depending on how much dirt had accumulated. Had the Adamses presented the trial court with more of a factual basis for the jury to determine the cost of mitigation without relying on pure speculation, Mr. Adams would be entitled to recovery for his efforts. However, the Adamses failed to present sufficient evidence of the reasonable value of Mr. Adams's mitigation efforts. As a result, we find that Judge Terry properly refused to grant element two of Instruction P-4 on damages.

## B. EMOTIONAL DISTRESS DAMAGES

¶16. The Adamses also complain about the trial court's failure to instruct the jury on damages arising from

mental and emotional distress. They claim that under Mississippi law, there is no requirement for proving physical impact or physical manifestation in order to receive damages for emotional distress.

¶17. The Adamses and U.S. Homecrafters agree that this is a case of simple negligence and not intentional conduct. The question, then, is whether Mississippi law does in fact require proof of physical manifestation in order to recover damages for emotional distress caused by simple negligence rather than an intentional tort. As we stated in *Finkelberg*, 608 So. 2d at 1221, the "seminal case" governing claims for emotional distress not accompanied by physical injury is *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898 (Miss. 1981). Therein, we cited several of our previous cases, reiterating the rule that a party may not recover damages for mental anguish "unaccompanied by physical or bodily harm" without evidence of "willful, wanton, malicious or intentional wrong. . ." *Devers*, 405 So. 2d at 902 (*quoting* *Daniels v. Adkins Protective Serv., Inc.*, 247 So. 2d 710, 711 (Miss. 1971)). We went on to say that:

> Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally-or even unintentionally yet the results being reasonably foreseeable-Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury. In such instances, it is the nature of the act itself-as opposed to the seriousness of the consequences-which gives impetus to legal redress. . . .

*Id*. We have repeatedly cited our decision in *Devers* with approval. *See*, *e.g.*, *Mississippi Valley Gas Co. v. Estate of Walker*, 725 So. 2d 139, 148-49 (Miss. 1998); *Wong v. Stripling*, 700 So. 2d 296, 307 (Miss. 1997); *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 658-59 (Miss. 1995); *Peoples Bank & Trust Co. v. Cermack*, 658 So. 2d 1352, 1365-66 (Miss. 1995); *Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996); *Finkelberg*, 608 So. 2d at 1221; *Strickland v. Rossini*, 589 So. 2d 1268, 1275 (Miss. 1991); *Wirtz v. Switzer*, 586 So. 2d 775, 784 (Miss. 1991).

¶18. In cases of simple negligence, as opposed to intentional tort, we have in some cases set out a more stringent standard:

> If there is outrageous conduct, no injury is required for recovery for intentional infliction of emotional distress or mental anguish. . . . One who claims emotional distress need only show that the emotional trauma claimed was a reasonably foreseeable consequence of the negligent or intentional act of another. . . . If the conduct is not malicious, intentional or outrageous, there must be some sort of demonstrative harm, and said harm must have been reasonably foreseeable by the defendant.

*Smith v. Malouf*, 722 So. 2d 490, 497-98 (Miss. 1998) (citations omitted). Similarly, in *Morrison*, we held:

> If [sic] the case of ordinary garden variety negligence, the plaintiff must prove some sort of injury, whether it be physical or mental. *See Wirtz v. Switzer*, 586 So. 2d 775, 784 (Miss. 1991); and *Devers*, 405 So. 2d at 902. If the conduct is not malicious, intentional or outrageous, there must be some sort of demonstrative harm, and said harm must have been reasonably foreseeable to the defendant. *Strickland v. Rossini*, 589 So. 2d 1268, 1275 (Miss. 1991).

*Morrison*, 680 So. 2d at 806. Most recently, in *Estate of Walker*, we stated, "If there is outrageous conduct, no injury is required for recovery for intentional infliction of emotional distress or mental anguish. . . . If the conduct is not malicious, intentional or outrageous, there must be some sort of demonstrative harm,

and said harm must have been reasonably foreseeable to the defendant." 725 So. 2d at 149 (*quoting Morrison*, 680 So. 2d at 806) (citations omitted).

¶19. However, another line of cases requires only that a plaintiff prove that the emotional distress in a simple negligence case was a reasonably foreseeable result of the defendant's conduct. The Adamses point to two cases which are a departure from the rule that there must be evidence of a "demonstrative harm" to support an award for emotional distress in a simple negligence case-*Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992), and *Southwest Miss. Reg'l Med. Ctr. v. Lawrence*, 684 So. 2d 1257 (Miss. 1996). Contrary to U.S. Homecrafters's assertion, these two cases involved "nothing more than simple negligence."*Veasley*, 610 So. 2d at 295; *Lawrence*, 684 So. 2d at 1269. In *Veasley*, we found that the plaintiff's claim for emotional distress caused by the insurance company's refusal to pay a life insurance claim was supported by her testimony that the company's conduct ". . . caused her worry, anxiety, insomnia, and depression. Additionally, she experienced difficulty in coping with daily life and children, her grandchildren, in particular." 610 So. 2d at 295. In reaching this decision, we stated:

> Applying the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries.

*Id*.

¶20. We pointed to this language in reaching our decision in *Lawrence*, finding that evidence of the plaintiff's worry and loss of the family home resulting from denial of self-insured equivalent workers' compensation benefits and employment termination was sufficient to support an award for emotional distress. *Lawrence*, 684 So. 2d at 1269. In so holding, we stated:

> This Court traditionally held that emotional distress and mental anguish damages are not recoverable in a breach of contract case in the absence of a finding of a separate independent intentional tort. . . .
>
> In recent years this Court has moved away from this requirement. In *Strickland v. Rossini*, 589 So. 2d 1268, 1275 (Miss.1991), we stated:
>
> The rule once was that, to recover damages for emotional distress, the plaintiff had to prove either (a) an intentional or at least grossly negligent tort or (b) negligence accompanied by physical impact. The Court has relaxed this rule in a long series of cases. . . . *The upshot of these cases in the present rule is a plaintiff may recover for emotional injury proximately resulting from negligent conduct, provided only that the injury was reasonably foreseeable by the defendant.*

*Id*. (citations omitted) (emphasis added).

¶21. It is undisputed that under Mississippi law, a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct. In cases of intentional infliction of emotional

distress, where the defendant's conduct was "malicious, intentional or outrageous," the plaintiff need present no further proof of physical injury. Where, as here, the defendant's conduct amounts to simple negligence, we take this opportunity to clarify that we have moved away from the requirement of proving some physical injury in addition to the proof of reasonable foreseeability. Our language in the previously cited cases, adopting the term "demonstrable harm" in place of "physical injury," indicates that the proof may solely consist of evidence of a mental injury without physical manifestation.

¶22. In this case, however, the Adamses failed to present sufficient proof of emotional distress to warrant the instruction to the jury. The only evidence presented by the Adamses supporting their claim for emotional distress was the following testimony by Mr. Adams on direct examination:

> Q. Dennis, how would you describe to this jury how the last five years have been at your house on Krohn Road?
>
> A. It's been a total nightmare. I mean, I've stayed up for days and I've stayed up for nights just hoping water wouldn't get in my porch. I have been out there the middle of the nighttime making sure, and I have dug it out in the middle of the nighttime just to keep water out of the house because I just couldn't get no help.
>
> Q. What do you do when you're at work and it rains?
>
> A. Worry real bad. Sometimes I leave work and go check real quick because I don't work because I don't work but - I guess it's about a half a mile from my house.

The evidence presented here is similar to that in both *Morrison v. Means* and *Strickland v. Rossini*, wherein the plaintiffs complained of worry or emotional upset and loss of sleep. *Morrison*, 680 So. 2d at 807; *Strickland*, 589 So. 2d at 1275-76. We found that this was insufficient evidence to support an award for emotional distress. *Id*. "[T]wo sentences out of the entire transcript offered in support of this claim are hardly enough evidence to support a verdict . . . for mental anguish." *Morrison*, 680 So. 2d at 807. Similarly, in *Strickland*, the only proof of emotional distress was four sentences of testimony by the plaintiff's boyfriend:

> She's been very depressed. Her kids have been very upset over all this and emotional. They've gone through a lot of stress and worry over the way their mother has been upset and sick and not able to sleep at night. I've been called to come out there and sit with her [on] occasions at night because of being [sic] so upset, and it's just . . [.] it's been a very detrimental thing for her.

589 So. 2d at 1275. *See also Estate of Walker*, 725 So. 2d at 149-50. We find that Mr. Adams's vague testimony about loss of sleep and worry caused by the drainage problem was insufficient to support an instruction or award of damages for emotional distress in this case.

## CONCLUSION

¶23. The Adamses failed to present a sufficient factual basis outside of pure speculation for the jury to determine the reasonable value of Mr. Adams's efforts in digging ditches to prevent further damage to their home. They also presented insufficient evidence to support an award for emotional distress. We therefore affirm the trial court's judgment refusing the proffered instruction on those two items of damages in this case.

¶24. **AFFIRMED**.

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, WALLER AND COBB, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**MILLS, JUSTICE, DISSENTING:**

¶25. The majority states that in the realm of negligent infliction of emotional distress, ". . . we take this opportunity to clarify that we have moved away from the requirement of proving some physical injury in addition to the proof of reasonable foreseeability." This is in sharp contrast to the language of *Smith v. Malouf*, 722 So. 2d 490 (Miss. 1998). In that case we stated:

> If the conduct is not malicious, intentional, or outrageous, there must be some sort of demonstrative harm, and said harm must have been reasonably foreseeable by the defendant.

*Id.* at 497-98.

¶26. I decline to join the expansion of liability espoused by the majority but would instead abide by the precedential language of *Smith v. Malouf*. Therefore, I must respectfully dissent.