781 So.2d 919 (2001)
CHERRY BARK BUILDERS, Appellant,
v.
Andrea WAGNER, Appellee.
No. 2000-CA-00417-COA.
Court of Appeals of Mississippi.
January 16, 2001.
Rehearing Denied April 3, 2001.
*920 James B. Galloway, Gulfport, Attorney for Appellant.
Andy J. Alfonso III, Attorney for Appellee.
BEFORE KING, P.J., IRVING, and PAYNE, JJ.

PROCEDURAL HISTORY
PAYNE, J., for the Court:
¶ 1. On July 20, 1999, Andrea Wagner filed suit in the Harrison County Chancery Court against Cherry Bark Builders and against Terry Loveless, individually. Wagner's claims against Loveless were dismissed. Concerning the claim against Cherry Bark, the chancellor awarded Wagner $10,000, stating that Cherry Bark was unjustly enriched by not specifically performing the contract. This amount also covered emotional damages that Wagner suffered from her experience in dealing with Cherry Bark on this particular matter. Feeling aggrieved by the chancellor's decision, Cherry Bark has appealed to this Court.

FACTS
¶ 2. On or about May 27, 1999, Andrea Wagner signed a contract with Cherry Bark Builders which called for Cherry Bark to build a home for Wagner in Harrison County, Mississippi. Wagner selected a "stock plan" and asked the builders to reverse the plan, building her house as a mirror image to the plan. On one occasion in June 1997 when the floor plan had been staked out, Wagner visited the site and notified Donnee Jones, a Cherry Bark salesperson, that the stakes were not laid out according to the flipped plan. Jones assured her that the stakes were correctly placed. Three days later, Wagner again visited the site and noticed that the form boards positioned to hold the fill dirt indicated an exact opposite positioning than was called for in her plan. Upon complaining to Jones, Wagner was again assured that the home was being built according to Wagner's plans. The first of July 1997, Wagner visited the site and found that the plumbing, vents and electrical lines were all installed contrary to Wagner's selected plan. Upon Wagner's complaining again to Jones, Jones finally conceded that the construction was not being done according to Wagner's selected plan. The following day, Jones phoned Wagner to notify Wagner that Jones had been mistaken and that the construction was being done according to plans and that *921 the slab would be poured that day. Jones further explained that the City had required that they "flip" the plan back to the original plan due to easement and drainage requirements. Upon investigation, though, Wagner discovered that this was not true and that the City had had nothing to do with Cherry Bark's altering her originally selected plan.
¶ 3. During this course of events, Jones alleges that she gave Wagner the option of canceling her contract and having her earnest money returned, but that Wagner declined to accept this deal. Because she suffered much anxiety from these events and because the completed house did not conform to her contracted plan, Wagner sued Cherry Bark.

ANALYSIS OF THE ISSUES PRESENTED

STANDARD OF REVIEW
¶ 4. With this appeal, appellant Cherry Bark raises the following questions and issues for our review:
I. WHERE THERE IS AN EXPRESS CONTRACT BETWEEN THE PARTIES, CAN A CAUSE OF ACTION LIE IN IMPLIED OR QUASI CONTRACT FOR UNJUST ENRICHMENT OR RESTITUTION?
II. WILL AN ACTION FOR RESTITUTION OR UNJUST ENRICHMENT LIE WHEN THE PLAINTIFF HAS ELECTED TO AFFIRM THE EXPRESS CONTRACT AND SUE FOR DAMAGES?
III. ARE DAMAGES RECOVERABLE FOR MENTAL DISTRESS IN THE ABSENCE OF PROOF OF DEMONSTRABLE HARM OR EVIDENCE OF MENTAL INJURY?
IV. DID THE COURT BELOW ERR IN DENYING THE MOTION OF CHERRY BARK BUILDERS FOR JUDGMENT AS A MATTER OF LAW?
V. DID THE COURT ERR IN AWARDING DAMAGES TO THE PLAINTIFF?
¶ 5. On appeal, Cherry Bark first claims that the trial court erred in interpreting the contract between Cherry Bark and Wagner. "The standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact finder. Appellate courts review questions of law de novo." City of Grenada v. Whitten Aviation, Inc., 755 So.2d 1208 (¶ 16) (Miss.Ct.App.1999) (citations omitted).
¶ 6. Our standard of reviewing the judge's decision concerning Cherry Bark's motion for judgment as a matter of law requires that we do the following:
[C]onsider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Patton-Tully Transp. Co. v. Douglas, 761 So.2d 835 (¶ 31) (Miss.2000) (citations omitted).
¶ 7. Our general standard of review requires that we not disturb a chancellor's factual findings unless we find that he was "manifestly wrong or clearly erroneous, or if an erroneous legal standard was applied. *922 Whenever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed." Browder v. Williams, 765 So.2d 1281 (¶ 12) (Miss.2000) (citations omitted).

DISCUSSION OF THE ISSUES
¶ 8. Cherry Bark's fourth and fifth issues are encompassed in its first three. Therefore, we resolve all of Cherry Bark's issues in this one discussion. First, Cherry Bark claims that since the parties had an express contract, "unjust enrichment" was not an available remedy, only being reserved for quasi-contract situations. Regarding this issue, the supreme court has stated:
The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
Estate of Johnson v. Adkins, 513 So.2d 922, 926 (Miss.1987) (citing Hans v. Hans, 482 So.2d 1117 (Miss.1986)). Since an express legal contract did exist, it appears that unjust enrichment is not a viable reason to award damages to Wagner. However, in reviewing the chancellor's words upon his awarding damages, the actuality is that Wagner was awarded the $10,000 not for unjust enrichment, but for her "anxiety and personal injury ... physical injury in trying to get this thing done" and "unjust enrichment on the part of the defendant" for failing to correct the problem before the slab was poured, which correction would have cost the builder approximately $7,700. From his words, it appears that the chancellor merely misused this terminology; nonetheless, his stated intention in awarding the damages was to compensate Wagner for the emotional distress she suffered at the hands of Cherry Bark. Thus, we find the unjust enrichment issue not to be a problem here.
¶ 9. In another issue, Cherry Bark argues that only those remedies described in the express contract were available for Wagner; thus, the judge erred in straying from this language in his award to Wagner. The actual language of the contract states at paragraph 11(b):
In the event of breach of contract by Seller, Buyer at his option may either: (1) accept the return of the earnest money deposit and cancel the contract, or (2) enter suit for damages in any court of competent jurisdiction, or (3) enter suit in any court of competent jurisdiction for specific performance.
Contrary to Cherry Bark's contention, Wagner did enlist one of the remedies provided in her contract with Cherry Barkthe Seller-builder breached the contract, and Wagner opted first to seek specific performance. While Wagner waited on her suit to resolve in the chancery court, the house, meanwhile, was being built. After the house was completed, the specific performance option was no longer available, and the chancellor opted to award damages, as is provided for in the contract as well.
¶ 10. Next, concerning Wagner's supposed obligation to prove injury, Cherry Bark argues that the court erred in awarding Wagner damages when she failed to present any proof that she suffered physically as a result of Cherry Bark's acts. Even though Wagner did not present doctors to testify on her behalf that she had suffered physical injury due to her situation with Cherry Bark, as further described the supreme court has *923 made clear that such showing is not necessarily required for a court to award damages for mental and emotional distress.
¶ 11. In Adams v. U.S. Homecrafters, Inc., 744 So.2d 736 (Miss.1999), U.S. Homecrafters entered into a contract with the Adamses to construct a home. Before construction was completed, Mr. Adams noticed that the porch area of the house flooded when it rained. This flooding continued even after the Adamses moved into their home, and Mr. Adams had to dig trenches and take other measures to divert the rain. Nonetheless, the rainwater continued to accumulate on the porch area. Mr. Adams stated that he and his wife had attempted for eighteen months to contact U.S. Homecrafters about the problem, but they received no response. Finally, Terry Loveless, a former U.S. Homecrafters officer, attempted to repair the Adams's drainage problem by digging contour ditches and placing landscape timbers around the site. The flooding problems continued. The Adamses ultimately filed suit against U.S. Homecrafters seeking monetary damages for property damage and emotional distress due to U.S. Homecrafters breach of warranty. After hearing testimony from Loveless, from a civil engineer, and from the Adamses, a jury found in favor of the Adamses and awarded them $6,731 in damages.
¶ 12. This damage award was to cover the work that Mr. Adams had performed himself in trying to divert the rainwater away from his home. The court declined to award Adams damages for mental anguish or emotional distress. On appeal, the supreme court reviewed this case and chose to expound the rule regarding emotional distress and the need to prove physical injury to receive such damages:
Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally  or even unintentionally yet the results being reasonably foreseeable-Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury. In such instances, it is the nature of the act itself-as opposed to the seriousness of the consequenceswhich gives impetus to legal redress.
Adams v. U.S. Homecrafters, Inc., 744 So.2d 736 at (¶ 17) (citations omitted). The supreme court also noted that in simple negligence cases, such as the present, a more stringent standard applies: "If there is outrageous conduct, no injury is required for recovery for intentional infliction of emotional distress or mental anguish... One who claims emotional distress need only show that the emotional trauma claimed was a reasonably foreseeable consequence of the negligent or intentional act of another." Adams, 744 So.2d 736 (¶ 18).
¶ 13. In the present case, the chancellor noted that Cherry Bark readily admitted their mistake, that Wagner was visibly upset throughout the time her home was being improperly constructed, that the builder had lied to Wagner, that Wagner had waited for months to get relief, that she had to employ an attorney to deal with the settlement, that she was faced with having to settle for less than she had bargained for, and that damages were warranted for Wagner's "physical injury in trying to get his thing done." In light of these findings, we find that this conduct on Cherry Bark's behalf intentionally evoked outrage or revulsion and was reasonably foreseeable; thus, an award of damage was warranted.
¶ 14. Though we adopt and apply the rule described in Adams, we distinguish the facts in the case sub judice from those in facts Adams where the court chose not to award damages for emotional distress. *924 The Adams court concluded that Mr. Adams's vague testimony about loss of sleep and worry caused by the drainage problem did not warrant a jury instruction concerning an emotional distress award. Id. at (¶ 22). Also, with Mr. Adams, no intent to outrage the homeowners was manifest on the part of the builder, since Mr. Adams complained only of worry in having to deal with the drainage problem, not pointing a finger to the builder for intentionally causing him distress. In the case sub judice, the builder on more than one occasion assured Wagner that the house was being constructed correctly, even though Wagner pointed out that it was not. Also, the builder blatantly lied to Wagner about the reason the plan was not flipped, blaming the City when it had played no role in the home construction. We find that it was certainly foreseeable that these flagrant manifestations would evoke outrage on Wagner's part; thus, we affirm the award of emotional damages to the victim here in accordance with the Adams rule.
¶ 15. Finally, we look both to the chancellor's failure to grant Cherry Bark a motion for judgment as a matter of law and to the chancellor's decision to award damages to Wagner. Cherry Bark argues that Wagner was not entitled to any money since she was not damaged by the failure to flip the floor plan. Also, Cherry Bark claims that Wagner's election to proceed and purchase the house precluded recovery of other damages, that Wagner received the full benefit of her bargain, and that Wagner suffered no harm because she was not "out" anything by virtue of Cherry Bark's failure to build the house according to Wagner's instructions. The chancellor found that Cherry Bark was given due notice to correct the problem, stressing that although Cherry Bark claims that Wagner was not "out anything," that she had suffered mental anguish due to the court proceedings on her initial specific performance claims and due to her having to enlist an attorney to assist her. Even viewing the evidence in a light most favorable to Cherry Bark, there is no question that Wagner suffered severe emotional distress at the hands of Cherry Bark. According to those rules set forth in Adams, we find that the chancellor was proper in denying Cherry Bark's motion for judgment as a matter of law.

CONCLUSION
¶ 16. Cherry Bark's contentions that Wagner was not due damages for unjust enrichment, that she improperly failed to show physical injury, and that Wagner improperly stepped outside the express contract to find a remedy are all without merit. As well, though the chancellor may have referred to his damage award as "unjust enrichment" it was essentially a damage payment to Wagner for mental distress suffered due to the breach by Cherry Bark. We find no error in the chancellor's decision. Accordingly, we affirm on all issues.
¶ 17. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED TO THE APPELLEE. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, and THOMAS, JJ., concur. CHANDLER, J., not participating.