ROBERTS, J.,
Dissenting.
¶ 15. With all due respect, it appears that the majority confuses the issues in deciding the case sub judice. As I see it, this Court must resolve the issue of whether there was a genuine question of material fact regarding the Morrises’ ability to demonstrate a legally cognizable injury. After all, that is the issue that the Appel-lees raised in their motion for summary judgment. However, in affirming the circuit court’s decision to grant the Appellee’s motion for summary judgment, the majority states:
Since we find other grounds .on which summary judgment was properly granted, we need not determine which of the two lines of cases is controlling.
We find that summary judgment in this case was properly granted, regardless of which line of cases applies, because the Morrises are utterly unable to show that the injuries they suffered were foreseeable to the Appellees. The only evidence offered by the Morrises is a National Highway Transportation Safety Administration (NHTSA) investigation that ultimately led to Ford’s issuance of a recall due to the faulty speed control deactivation switch. However, the NHTSA investigation was only begun in October 1998, approximately four months before the Towncar combusted. The investigation was not completed until several months after the fire, at which time Ford issued its recall. No other evidence whatsoever was presented by the Morrises indicating that any of the Appellees were even aware of a problem with the vehicle. No specific examples were provided demonstrating other instances in which Ford vehicles had spontaneously combusted. No reports were submitted indicating that there was a proven and known problem with the vehicles.
I must dissent for two distinctly separate reasons.
¶ 16. First, the Appellees did not raise the issue of Appellees’ prior knowledge of the existence of a product defect in their motion for summary judgment. Rather, the Appellees claimed that the Morrises could not produce proof of demonstrative harm or that Ford proximately caused the Morrises’ emotional injuries. The Morrises never had a chance to rebut that issue or otherwise defend against it. In essence, the majority ambushes the Morrises with an issue where it did not previously exist. The effect deprives the Morrises of notice of the issue and an opportunity to be heard. In my opinion, the majority’s affirmance of summary judgment on an issue that was not raised in the circuit court results in a violation of the Morrises’ rights to due process.
¶ 17. Secondly, assuming arguendo that the Appellees raised the issue on which the majority relies, it is my opinion that the record is sufficient to survive a motion for summary judgment. The majority apparently concludes that the Morrises’ emotional distress injuries were not, legally speaking, foreseeable to the Appellees. Within their motion for summary judgment, the Appellees raise the issue of whether there existed a genuine issue of fact concerning the Morrises’ ability to show demonstrable harm. As to when a plaintiff may recover damages for emotional distress in a simple negligence action, there are currently two lines of cases. The first line of cases holds that a plaintiff may only recover damages for emotional distress if he can prove “some sort of physical manifestation of injury or demonstrable physical harm.” Am. Bankers' Ins. Co. of Fla. v. Wells, 819 So.2d 1196 at (¶¶ 43-45) (Miss.2001). A second line of cases, identified as a minority view but never explicitly overruled, holds that a *439 plaintiff may recover damages for emotional distress if he shows that the harm was reasonably foreseeable. Adams v. U.S. Homecrafters, Inc., 744 So.2d 736 (¶¶ 20-21) (Miss.1999). This theory of liability, as stated in Adams, is an echo of Justice Hawkins’ eloquently stated concurring opinion in Sears, Roebuck & Co. v. Devers, 405 So.2d 898 (Miss.1981) (Hawkins, J., concurring). In identifying that damages for infliction of emotional distress as a result of simple negligence was an actionable legal theory, Justice Hawkins stated:
I concur in the result reached by this opinion. I agree that an act which can only be characterized as one of simple negligence happens to cause transitory emotional or mental disturbance, ephemeral in nature, and requiring no professional help, recovery should not be allowed. I do not believe the language in any previous opinion should be construed to mean, however, that this Court will never uphold a judgment for serious mental injury alone caused by the negligence of another. Although it might be considered an unnecessarily fine distinction, because it is difficult to conceive of an act causing medically serious mental injuries which does not thereby have some physical consequences as well upon the body, this Court should specifically recognize that mental injury alone, if carrying serious consequences and supported by competent medical evidence, is sufficient to support a claim for damages. If there is a genuine basis of liability due to the negligence of another, the plaintiff should not be denied recovery simply because the assault is only upon the mind or nervous system, when the result is a serious, medically cognizable injury. This would not be changing a rule of law, but would be a recognition by this Court of the enormous advance which has been made in the art, science and technology of the diagnosis and treatment of mental and emotional infirmities. This, in my opinion, was the thrust of our holding in First National Bank v. Langley, 314 So.2d 324 (Miss. 1975), and should be clearly enunciated here.
Id. at 902-03. Justice Hawkins’ statement is even more relevant today given the advancements made in the medical community over the past quarter century.
¶ 18. As to the first line of cases, the record contains sufficient evidence to demonstrate a genuine issue of material fact as to whether Ms. Morris’s emotional distress was embodied in the requisite physical manifestation. Ms. Morris sought medical treatment for emotional problems thirty-one (31) days after the fire. She was prescribed several medications for depression, sleeplessness, moodiness, and anxiety. Ms. Morris’s depression culminated with a suicide attempt and admission into St. Dominic Hospital. Medical records taken by several medical personnel throughout Ms. Morris’s ordeal indicate that her thoughts of suicide and her later attempt to accomplish same were the ultimate result of her witnessing her and her husband’s house burning down, which was, according to three expert witnesses, the result of the car’s defective electrical components. We are bound to examine the evidence in thé light most favorable to the Morrises. McMillan v. Rodriguez, 823 So.2d 1173(¶ 9) (Miss.2002). If any doubt exists as to Morris’s ability to prove causally related demonstrable harm, that doubt must be resolved in favor of denial of Appellees’ summary judgment motion. Shelton v. American Ins. Co., 507 So.2d 894, 896 (Miss.1987) (citing Brown v. Credit Center, Inc., 444 So.2d 358 (Miss.1983) (other citations omitted)).
¶ 19. As for the second, “minority” line of cases, the record also contains a genuine issue of material fact as to whether Ms. *440 Morris’s emotional distress was reasonably foreseeable. While there certainly could be circumstances in which the nexus between the negligent act is so far removed from the harm that results as to preclude the existence of a genuine issue of material fact, that is not the case here. Surely physical harm is a foreseeable result where a car contains a defective component that causes fires. While it is admittedly less certain that one might suffer emotional distress, it can hardly be said to be unforeseeable. Following the logical steps, it is not. abnormal for people to own a car and to have a garage attached to their home. Likewise, it is not abnormal for a car owner to store that car in an attached garage. If a defective component in one’s car caused a fire, it is foreseeable that the fire would spread to the home. Surely, at the least, a jury issue exists as to whether or not it is reasonably foreseeable that one may suffer emotional distress damages when she evacuates her burning home and then watches it and her treasured possessions burn.
¶ 20. It should also be noted that the supreme court has identified the “nature of the incident” giving rise to the alleged emotional distress damages as having some import in this regard. University of Southern Miss. v. Williams, 891 So.2d 160 (¶ 32-33) (Miss.2004). The Williams court noted that the “nature of the incident” is important in two ways. Id. ■ .at (¶ 33). First, it is essential in determining the foreseeability of the alleged emotional harm. Id. Second, the more outrageous the defendant’s conduct, the lower the plaintiffs burden of proving specific harm. Id.
¶ 21. In any event, it appears that the majority does not resolve the ease on the issue of foreseeability of harm, but rather on the issue of foreseeability of the defect. That is, the majority concludes that the Morrises’ emotional distress injuries were not foreseeable to the Appellees because the Morrises’ failed to prove Appellees had notice of the defective speed control deactivation switch. The majority bases its conclusion on the prospect that the Mor-rises’ only evidence on the foreseeability issue was the NHTSA investigation, which began approximately four months before the Morrises’ home burned. In my opinion, this is where confusion over the issue surfaces.
¶ 22. The NHTSA investigation speaks to whether the defect was foreseeable. The Appellees did not claim there was a genuine issue of material fact as to fore-seeábility of the defect. Even assuming that was the issue, the record demonstrates the existence of a genuine issue of material fact as to whether the defect was foreseeable.
¶ 23. This focus on foreseeability hints that negligence and negligent infliction of emotional distress were the only theories of liability extended by the Morrises. This was not the case. As to the specific claims alleged by the Morrises, in addition to the negligence claims based on defective design, defective manufacture, inadequate or nonexistent warnings, and others, the Mor-rises claimed the Appellees were strictly liable under a products liability theory.
¶ 24. As to the foreseeability of the defect, one of the Morrises’ expert witnesses, Steve Shephard, whose qualifications include a Ph.D. in mechanical engineering, submitted a sworn affidavit by which he stated that he studied all relevant documents and pleadings. According to Shephard’s expert opinion, the Morrises’ car contained a defect that proximately caused the fire that spread to the Mor-rises’ home. Shephard further stated that the same defect in other Ford, Lincoln, and Mercury cars caused fires in numerous instances from 1992 to 1999. She- *441 phard alleged that the Appellees had actual knowledge of the defect due to the frequent reporting to them of occurrence of fires, yet did nothing to correct the problem. Shephard even alleged that the Appellees knew the danger the defect created and actually concealed that knowledge from federal regulators.
¶ 25. As to the admissibility of She-phard’s affidavit, Texas Instruments did submit a motion to strike said affidavit wherein TI advanced several arguments why Shephard’s affidavit should be quashed. These included an apparent lack of a resume or other list of Shephard’s qualifications, a lack of the required attachments of documents to which She-phard referred, a lack an explicit statement of personal knowledge, as well as many others. While it is arguable, given the facts surrounding the affidavit, whether or not TI’s motion to strike should have been granted, in making the determination to grant summary judgment, the lower court stated that it actually considered the affidavit of Shephard but found, without further explanation, that it “d[id] not contain any testimony that would be admissible evidence at trial.” Furthermore, the trial court went on to state that summary judgment was proper even without consideration, and eventual granting, of TI’s aforementioned motion. In sum, I cannot agree with the trial court’s determination of the admissibility of the evidence contained in Shephard’s affidavit.
¶ 26. While the burden of proof of emotional damages is high, it is my contention that under either standard promulgated by our supreme court, there exists a genuine issue of material fact for ultimate jury resolution that requires us to reverse the circuit court’s decision to grant summary judgment in the Appellee’s favor and remand the matter to the circuit court for a trial on the merits. Because the majority affirms the circuit court’s decision, I respectfully dissent.
MYERS, P.J., CHANDLER AND BARNES, JJ., JOIN THIS OPINION.