SHELL PETROLEUM CORPORATION *v.* YANDELL.

(Division B.   Jan. 28, 1935.)

[158 So. 787.   No. 31505.]

Gardner, Denman & Gardner and Frank E. Everett, Jr., all of Greenwood, for appellant.

58

Alfred Stoner, of Greenwood, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee filed his bill in the chancery court of Leflore county against appellant to recover the balance of rental due him by John E. Fant (who joined appellee in the bill) under a lease contract theretofore entered into by appellee and Fant by which appellee leased to Fant for a term of five years what is commonly known as a filling station in the city of Greenwood, at a monthly rental of forty dollars. The bill charged that appellant had become liable therefor by virtue of the terms of a sublease of the filling station by Fant to appellant, and the dealings of all the parties under the two leases, against which liability appellee offered to credit the balance due on an indebtedness he was due appellant of three hun-

dred forty-two dollars with interest. There was a trial on bill, answer, and proofs, resulting in a decree in appellee's favor for the sum of one thousand dollars, with interest, against which the court credited the balance due by appellee to appellant on his indebtedness of three hundred forty-two dollars with interest. From that decree appellant prosecutes this appeal.

Appellee and John E. Fant entered into a written contract on the 21st day of December, 1929, by the terms of which it was provided that appellee should erect a filling station for the service of automobiles with gasoline and other petroleum products. The station was to be erected on a lot in North Greenwood, appellee was to equip the station for service, and Fant was to pay him forty dollars a month rental. The lease was for a term of five years, and provided that Fant should have the right to sublease the station to appellant. Appellee equipped the station in accordance with appellant's requirements. He purchased from appellant the necessary gasoline tanks and pumps, including an underground storage tank, for which he agreed to pay appellant the sum of three hundred forty-two dollars in monthly payments of fourteen dollars and twenty-five cents, to secure which he gave a deed of trust on the equipment. Fant subleased the station to appellant, which sublease took place about the same time as the lease from appellee to Fant. This lease was also for a period of five years, and provided that appellant should pay Fant, as rental, the sum of one cent per gallon on all gasoline sold by appellant on the premises during each preceding month, and further agreed to operate the station in a businesslike manner and endeavor to promote and increase sales. As a step in the sublease appellant required appellee to consent to the subleasing. This consent was given in writing and provided that the subleasing was by appellee's consent, and, in addition, that "the undersigned agrees that in the event the lessor defaults in any of the covenants of the

lease under which said lessor acquired rights in and to the above described premises, to notify the Shell Petroleum Corporation at Shell Building, St. Louis, Mo., of such default; said Shell Petroleum Corporation shall have thirty days after the receipt of such notice to make good at its option, such default on the part of said lessor, and further agree that so long as Shell Petroleum Corporation thereafter complies with the terms of the original lessee its rights in and to the property this agreement shall be valid and remain in full force and effect.''

The lot on which the station was located was not the property of appellee, but that of his grandfather, W. M. Yandell, Sr., but appellee was in charge and control of it. The grandfather was dead, and his estate was being administered.

Appellant operated the station with Fant in charge for about six months. Fant then assigned his interest in the lease to one Adams, who operated it awhile. Its operation covered in all a period of ten months; then it was closed and has not been in operation since.

The transfer from Fant to Adams was not introduced in evidence. It was offered by appellant and objected to by appellee; it was not pleaded by appellant. There was nothing in the evidence to show that the appellee knew of it until the trial, although he knew that Adams was operating the station.

Appellee testified that during the ten months of the operation of the station appellant paid him the forty dollars per month rental which Fant had agreed to pay; that the one cent a gallon rental appellant agreed to pay Fant was sufficient for that purpose. There was some conflict in the evidence on this point, but the court was justified in believing appellee's testimony.

The ground of appellee's recovery was that appellant breached its lease contract with Fant by closing and ceasing the operation of the station, and by reason thereof became liable to him for the monthly rental pro-

vided for in the contract—one cent a gallon on gasoline that would have been sold in the station for the balance of the term—and that appellee succeeded to Fant's rights to the extent of forty dollars a month for the balance if sufficient to pay that amount.

Appellant contends that there was no privity of contract between appellee and it; that it neither expressly nor impliedly promised to make good any default in Fant's rental payments to appellee to the extent of the rental payments it might be due Fant. In other words, appellant's contention means that the right and title, if any, in what it was due Fant, was in Fant, and the appellee had no right or title thereto. Concede that the legal title was in Fant, it is manifest from the bill in which Fant joins, also from his testimony as a witness in the case, that his entire beneficial interest—all but the bare legal title—had been turned over to appellee for the purpose of paying his monthly rentals to appellee so far as such interest might go. In other words, the bill and the evidence show a complete equitable assignment of Fant's interest to that extent. The bill avers that it belongs to appellee, and Fant testified that he wanted appellee to have it. ''Parol and written equitable assignments are of equal validity. Any order, writing, or act which makes an appropriation of a debt or funds amounts to an equitable assignment thereof.'' 5 C. J., 911, 912. An open account may, while in suit, be assigned by an oral agreement, upon a sufficient consideration, so as to pass the equitable title to the assignee. Pass v. McRea, Coffman & Co., 36 Miss. 143. To illustrate: A owes B one hundred dollars, and pays the debt with a note he holds against C for the same amount, payable to order; he delivers the note to B without indorsing it; C defaults in payment; both A and B join in a suit at law on the note against C, asking a judgment in B's favor. We are inclined to the view, although we do not so decide because it is not necessary, that that would operate

as a transfer of A.'s legal title in the note to B; certainly it would constitute a transfer of his entire beneficial interest.

Appellant argues that to permit appellee to rely on equitable assignment would be an abandonment of the theory on which the cause was brought and tried in the court below and on which it was originally breifed in this court, which was merger and subrogation; that the case tried in the court below must be the case tried on appeal; that an appellate court will not review a case which might have been tried in the court below but which was not actually tried. It is true that that is the case; it is sustained by numerous decisions of our court, as well as courts of appeal generally (Griffith's Chancery Practice, sections 676, 677, and cases in the notes); but it does not apply here. Both in the court below and in this court appellee planted his right to recover on the ground that he had succeeded to the rights of Fant. It is true that he has given different reasons for his position, one of which, suggested by this court, is equitable assignment. The ground upon which a case is based cannot be shifted on appeal, but the reasons for the ground can be shifted as often as the party may choose. Appellant was not misled as to the facts relied on by appellee; those are set out in the bill and shown by the evidence. If appellant was misled, it was as to the governing principles of law relied upon by appellee. If a party makes a mistake in the trial court as to the law of his case, he is not estopped on appeal from invoking the true legal principles.

Another contention of appellant is that appellee could not proceed without making Adams a party. Fant had transferred his interest in the lease to Adams before appellant breached its contract with Fant. If Adams had any interest in the matter, it was not shown by the bill and exhibits; it developed in the evidence during the trial. As above stated, when the assignment by Fant

of his interest in the lease to Adams was offered in evidence by appellant, it was objected to by appellee and was not admitted, although the contents of it were read. It is true, as contended by appellant, that the nonjoinder of a necessary party may be reached by demurrer, provided the absence of the party appears on the face of the bill. As just stated, nowhere in the bill or exhibits was it shown that Adams had any interest in the subject-matter of the litigation. If the absence of a necessary party does not appear on the face of the bill, then it must be shown by plea or answers of the defendant, and, unless the nonjoinder be a matter indispensably essential, it must be raised in the trial court, without which it will not be reviewed on appeal. Griffith's Chancery Practice, section 147, and case notes.

Appellant cannot defeat a recovery on the ground that the lot on which the station was located was not owned by appellee, but by his grandfather. Appellee was the landlord; he was in possession and control of the lot. Both appellant and Fant recognized appellee as having the right to lease the premises. Neither a tenant nor a subtenant can dispute the title of the landlord. Wilson v. Peacock, 111 Miss. 116, 71 So. 296; Stier v. Surget, 10 Smedes & M. 154. Furthermore, during the trial appellee offered to amend his bill by adding as parties the executors of the will of his grandfather, to which offer appellant objected. They were not made parties. New parties complainant may be added at any time. Griffith's Chancery Practice, sections 140 and 146 and case notes.

It was not shown that appellee, as provided in his written consent that Fant sublease the station to appellant, notified appellant of Fant's default in the payment of the monthly rental. The evidence in the case, however, fairly interpreted, showed that appellant had notice of Fant's default; that it knew when it perma-

nently closed the station for operation that thereafter Fant was in default; that during the operation of the station Fant, as well as appellee, looked to the rentals Fant was to receive from appellant to pay rentals to appellee. Appellee was not required to do a vain and useless thing. Appellant was not in any wise prejudiced by appellee's failure to give the notice; it lost nothing by it.

Appellant contends lastly that damages attempted to be proven for the breach of the contract were too vague and speculative to be the foundation of a judgment. The evidence showed that during the ten months the station was operated it showed the following sales of gasoline: February, three thousand six hundred gallons; March, four thousand gallons; April, five thousand nine hundred ninety gallons; May, four thousand five hundred gallons; June, four thousand one hundred fifty gallons; July, four thousand four hundred twenty-eight gallons; August, three thousand seven hundred gallons; September, two thousand eight hundred twenty-five gallons; October, two thousand five hundred gallons; November, two thousand four hundred forty gallons. The evidence tended to show that, if the business had been continued in accordance with the contract for the balance of the five-year period, the sales would have averaged from two thousand five hundred to three thousand five hundred gallons per month. The court fixed the amount at two thousand five hundred gallons; and one cent a gallon, the commission Fant was to receive, amounts to twenty-five dollars a month. The court therefore decreed the damages for the breach of the contract at twenty-five dollars a month. We think the evidence formed a sufficient basis for a calculation of the damages. Where a contract is entered into and continued for a sufficient portion of the time to show that the party seeking damages for a breach thereof would derive a reasonable net amount from the earnings, there is a

sufficient certainty to form a basis for recovery. Beach v. Johnson, 102 Miss. 419, 59 So. 800, 801, Ann. Cas. 1914D, 33. "The rule that damages which are uncertain or contingent cannot be recovered does not apply to an uncertainty as to the value of the benefit or gain to be derived from performance, but to an uncertainty or contingency as to whether any such gain or benefit would be derived at all." Beach v. Johnson, supra. The damages for a breach of a contract are such as the parties may have reasonably expected to follow from the breach. The damages are speculative when the cause is uncertain, not when the amount is uncertain. 17 C. J. 756; Yazoo & M. V. R. R. Co. v. Fisher Bros., 102 Miss. 702, 59 So. 877; Thorne v. True-Hixon Lbr. Co., 167 Miss. 266, 148 So. 388. Here there was no uncertainty as to the cause. The uncertainty consisted of the amount of damages, and the evidence was sufficient as the basis of the finding of the court.

We do not understand Crystal Springs Ice Co. v. Holliday, 106 Miss. 714, 64 So. 658, to declare a contrary principle. The court simply held in that case that the plaintiff's mere opinion as to the number of cars of ice he would have sold and the amount of profit he would have made was incompetent, but that it took the facts on which the opinion was based to show the damage.

Affirmed.