568 So.2d 702 (1990)
Roy STEPHENS, Executor of the Estate of Marcus Berry, Deceased[1]
v.
Talmadge BROCK and Terry Worrell.
No. 07-CA-58755.
Supreme Court of Mississippi.
July 11, 1990.
Rehearing Denied October 17, 1990.
Reeves Jones, Jackson, for appellant.
*703 Marc E. Brand, Brand & Abbott, Jackson, for appellees.
En Banc.
PITTMAN, Justice, for the Court:
On or about August 2, 1984, Terry Worrell and Talmadge Brock discovered that Marcus Berry's cows had been in their respective soybean fields. Upon inspection both found that the cattle had caused significant damage to the crops by eating or trampling the soybeans. Four soybean fields were involved: a 20 acre field and a 15 acre field leased by Brock, and an 11 acre field and a 10 acre field leased by Worrell. Since the parties were unable to settle their claims outside of court Worrell and Brock filed separate claims against Berry on September 7, 1984. These complaints alleged that Berry had violated § 69-13-1 Miss. Code Ann. (1972) as amended, and was liable for the damage to their crops. The complaints also alleged that Berry was negligent in maintaining the fence which separated the property.
In his answers Berry denied the allegations of the complaints. Berry also set forth a counterclaim alleging that Worrell and Brock, or their agents had trespassed upon his property, failed to maintain a party line fence, conspired to commit trespass and committed civil conversion. In his counterclaim Berry sought damages from Brock and Worrell in the total amount of $24,400.00.
Subsequent to filing their complaints, on September 12, 1984, Brock and Worrell discovered Berry's cattle again trespassing on their property. During this intrusion, Brock and Worrell caught several of the cows and had them impounded pursuant to the stock law. Berry was required to post bond for the damage caused by the cattle before he could have the cattle returned.
As a result of the September 12, 1984, trespass and damage by Berry's cattle to the soybeans, Brock and Worrell were granted permission by the County Court to file amended complaints. The amended complaints sought damages for the additional destruction of the crops and all damages allowed under § 69-13-17 Miss. Code Ann. (1972) as amended. In his answer to Worrell's amended complaint Berry added the additional counterclaim that Worrell intentionally shot two of Berry's cows.
By an agreement of the parties, Brock's and Worrell's lawsuits, with attendant counterclaims, were consolidated for the purposes of trial pursuant to Rule 42(a) Miss.R.Civ.Proc. Trial began on June 20, 1985, in the County Court of the Second Judicial District of Hinds County. The trial court directed a verdict in favor of Brock and Worrell on the trespassing charge. The jury found in favor of Worrell on the cattle shooting charge and awarded Worrell $6,300.00 and Brock $11,300.00 respectively for the damage to their soybean crops.
This Court having reviewed the arguments of the parties finds only one issue meritorious.

I.

WERE THE JURY VERDICTS EXCESSIVE AND NOT SUPPORTED BY THE EVIDENCE OR THE LAW?
At trial the proof of damages was weak. No document was ever introduced into evidence; instead both Talmadge Brock and Terry Worrell used written sets of figures to refresh their memory. Brock testified that he incurred actual damages in the approximate amount of $3,834.00 for the August cattle excursion in his two fields and $4,945.31 for the September damage. Worrell's testimony was that his August damage amounted to $429.69. He further testified that his eleven (11) acre field suffered $820.31 worth of damage in the September 12, 1984, incident. Worrell alluded to total damage for a ten acre field on September 12, 1984. During his cross-examination Worrell stated that he suffered about $2,000 worth of damage on September 12, 1984. In calculating the damages the parties took the number of bushels destroyed multiplied by the market price for soybeans at the time the crops were destroyed. Neither Brock nor Worrell put on evidence of their operating expenses. *704 They testified only as to their bushel loss multiplied by the market price being paid at the time of loss for a bushel of soybeans. There was no testimony of the harvesting costs. Marcus Berry tried to question the two with regard to their operating expenses but Worrell stated he did not keep good records and Brock's I.R.S. schedule "F" forms were insufficient.
Marcus Berry argues that under our law the parties must prove their net profits. For support he cites two Mississippi cases, Ishee v. Dukes Ford Company, 380 So.2d 760 (Miss. 1980) and Leard v. Breland, 514 So.2d 778 (Miss. 1987). In Leard this Court, citing a Wisconsin case, stated:
The measure of damages for injury to or partial destruction of a growing crop is the difference between the crop's value immediately before and after the injury or partial destruction. Under this rule, the most generally accepted method for determining damages for such injury to a crop is to compute the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at maturity, less the expense of cultivation, harvesting and marketing that portion of the probable crop which was prevented from maturing.

[Cutler Cranberry Co., Inc., v. Oakdale Electric Cooperative and Dairyland Power Cooperative] 78 Wis.2d [222] at 229, 254 N.W.2d [234] at 238 [(1977)]. 514 So.2d at 783. (Emphasis added)
Leard also stated that the person seeking recovery should not be placed in a better position than he would have been had the damage not occurred. 514 So.2d at 782, citing Mid-Continent Telephone Corp. v. Home Telephone Co., 319 F. Supp. 1176, 1198 (N.Dist.Miss. 1970). The holding in Leard was followed in Kaiser Investments v. Linn Agriprises, 538 So.2d 409, 416 (Miss. 1989).
Worrell and Brock do not address Berry's argument about net damages. They argue that the damages awarded were proper because the damages were not speculative, and that they were within the proper range. For support that the damages were proper since they were not speculative Brock and Worrell cite the case Shell Petroleum Corp. v. Yandell, 172 Miss. 55, 158 So. 787 (1935).
Shell, which was a breach of contract case, dealt with whether damages were too vague to be the foundation of the judgment. This Court, in Shell, held that there was evidence to determine the net amount of earnings with "sufficient certainty to form a basis for recovery." 172 Miss. at 66-67, 158 So. at 790. While there was some evidence as to the gross damages there was no evidence as to net damages required by Leard. In Lovett v. E.L. Garner, Inc., 511 So.2d 1346 (1987) this Court discussing damages said, "[I]n calculating loss of future profits, such loss is that of net profits as opposed to gross profits" and that "... future profits should always be discounted at an appropriate rate to arrive at present value." Lovett draws a distinction between gross and net profits and makes clear that a claim that is for "future profits" is limited to proof as to net profits and not anticipated gross receipts. See also City of New Albany v. Barkley, 510 So.2d 805 (Miss. 1987). Merely proving loss, plus anticipated yields and the market price at the time of loss, speaks only to hope for gross receipts; there must be more if one is to recover for loss of future profits. Judge Anderson in City of New Albany v. Barkley wrote "... that it is appropriate to show future loss of profit by introduction of evidence from past profits. Further, while the measure damages need not be perfect, the most accurate and reliable evidence available should be required." Id. at 807 citing Harrison v. Prather, 435 F.2d 1168, 1174 (5th Cir.1970). Both Brock and Worrell testified in very general terms to the number of acres damaged, the price per bushel and their supposed loss. That a substantial loss occurred is unquestioned. However, the proof is vague as to the dollar amount of the loss even to the point of suggesting an intentional vagueness. Surely Brock and Worrell could have produced evidence more precise and proof more exact. Here there is no attempt to offer evidence of past profits, cost of production or marketing, *705 but only proof of gross revenues anticipated. Thus the damages awarded were improper.
Having found that the jury award was improper, this Court must now determine what is the proper remedy. The state legislature, exercising practical knowledge and agricultural wisdom, must have realized the difficulty of proving damages to crops by livestock. It has adopted a statutory guideline for loss of crops as a result of trespass of livestock. Section 69-13-19 Miss. Code Ann. (1972) as Amended, states:
Every owner of livestock referred to in § 69-13-1 shall be liable for damages for all injuries and trespasses committed by such animals by breaking and entering into or upon the lands, grounds, or premises of another person; and the person injured shall have a lien upon the animal, or animals, trespassing for all such damage. The damages for such trespass shall not be less than ten dollars ($10.00) for each horse, cow or hog, and five dollars ($5.00) for each of the other kinds of stock; and for every succeeding offense, after the owner has been notified of the first trespass or injury, double damages shall be recovered with costs. For breaking or entering into a pasture or waste ground, however, double damage shall not be recoverable, and the damages in such cases may be assessed as low as eight dollars ($8.00) for each horse, cow or hog and two dollars ($2.00) for each of the other kinds of livestock.
This statutory guide is not the maximum amount of damages allowed but it is the minimum. On the first occasion Talmadge Brock stated that he found 62 cows in his field. Marcus Berry did stipulate that his cows were in Talmadge Brock's field on August 7, 1984. Talmadge Brock testified that 102 of Berry's cows were in his field on September 11, 1984. Terry Worrell stated that he counted 75 cows in his field on August 6, 1984. He also claimed that Marcus Berry's cows were in his soybean fields on September 11, 1984. While Worrell did not state an exact number of cattle that were in his field the second time he did catch and impound fifteen (15) of Berry's cattle. The total amount of statutory damages that can be proved for Talmadge Brock is $2,660.00. (62 cattle caught in the field times(x) $10.00 for the first violation and 102 cattle caught in the field times(x) $20.00, for the second violation, pursuant to § 69-13-19 Miss. Code Ann. (1972) as amended.) Worrell can prove statutory damages in the amount of $1,050.00. (75 cattle caught in the field times(x) $10.00 for the first violation and 15 cattle caught in the field times(x) $20.00, for the second violation).
Marcus Berry did move for a remittitur after the jury award thus making it proper for this Court to reverse the jury award and render in the amount of statutory damages.
JURY VERDICT IN FAVOR OF TALMADGE BROCK IN THE AMOUNT OF $11,300.00 IS REVERSED AND JUDGMENT IS RENDERED HERE FOR BROCK IN THE AMOUNT OF $2,660.00.
JURY VERDICT IN FAVOR OF TERRY WORRELL IN THE AMOUNT OF $6,300.00 IS REVERSED AND JUDGMENT IS RENDERED HERE FOR WORRELL IN THE AMOUNT OF $1,050.00.
AS TO ALL OTHER ISSUES, THE JUDGMENT OF THE LOWER COURT IS AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents.
DAN M. LEE, Presiding Justice, dissenting:
The majority opinion is written in such a way as to ignore the reality of the case. Talmadge Brock and Terry Worrell are being punished because, at best, they are guilty of poor record-keeping. The majority correctly explains that in calculating the damages the parties took the number of estimated bushels destroyed multiplied by the market price for soybeans at the time the crops were destroyed. Neither Brock or Worrell put on evidence of their operating expenses, i.e., harvesting costs that *706 were saved since the cows destroyed the soybeans before the crop was ready for harvest. The opinion concludes that "[m]erely proving average loss, plus anticipating yields and the market price at the time of loss speaks only to hope for gross receipts; there must be more if one is to recover for loss of future profits."
I simply cannot agree with this conclusion in light of the facts of this case. As the old adage says, "You can't squeeze blood from a turnip." The record clearly reveals that Brock and Worrell could produce no records of past harvesting expenses upon which they, the defense or the jury could rely. Nevertheless, they presented to the jury evidence of their loss sufficient to justify the jury verdict they were awarded. Even the majority agrees "[t]hat a substantial loss occurred is unquestioned." The question here is, "How much loss was incurred?"; not how much profit was lost. But then, they turn around and conclude that "there is no attempt to offer evidence of past profits, cost of production or marketing, only proof of gross revenues anticipated. Thus, the damages awarded were improper." The majority does not appear to be saying that the figures put forth as proof of damage by Brock and Worrell are out of line of exorbitant, but only that because there was no proof of expenses, the jury erred by concluding as they did. This just isn't logical to me.
Furthermore, as we have clearly stated in the case of Fitzner Pontiac-Buick-Cadillac v. Smith, 523 So.2d 324 (Miss. 1988),
Our scope of review in such contexts is as limited as it is familiar. We consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. See, e.g., Rester v. Morrow, 491 So.2d 204, 211-12 (Miss. 1986); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
Id. at 326.
Despite acknowledging that a substantial loss occurred, the majority opinion seeks to ignore a perfectly acceptable jury verdict and reduce same to the minimum statutory damages afforded by Miss. Code Ann. § 69-13-19 (1972, as amended), to which I cannot agree. This Court has repeatedly held that whether or not a jury verdict evinces such bias, passion or prejudice on the jury's part as to shock the conscience is the test to be applied in determining the excessiveness or inadequacy of a verdict. Kern v. Gulf Coast Nursing Home of Moss Point, 502 So.2d 1198 (Miss. 1987); James Reeves Contractor, Inc. v. Chain, 343 So.2d 1229 (Miss. 1977); Walton v. Scott, 365 So.2d 630 (Miss. 1978).
Regarding additur and remittiturs, this Court further stated in Kern, supra at 1201, citing to City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss. 1983):
[W]e will not vacate or reduce a damage award unless it is so out of line as to shock the conscience of the Court.
The question is not what we would have done had we been sitting as the jury, but whether, considering the evidence in the light most favorable to the plaintiff, together with all reasonable inferences which may be drawn therefrom, we can say that no reasonable jury could, on these facts have concluded that plaintiff's damages were in the amount of $27,000.
The majority speaks only of profits. There may or may not be a profit from a growing crop, but Worrell and Brock are entitled to the loss of the crop at the time of the loss. You may have a car that was destroyed by a person wrecking it and it was not worth what the person paid for it. The fact that the dealer may lose on re-sale does not prevent the car's owner from recovering its value.
*707 I would affirm the case because the jury's verdict of $11,300.00 and $6,300, respectively, awarded to Brock and Worrell was well within the evidence presented "under our oft-quoted scope of review of a jury's findings." Kaiser Investments, Inc. v. Linn Agriprises, Inc., 538 So.2d 409, 420 (Miss. 1989).
NOTES
[1] Roy Stephens, as executor of the estate of Marcus Berry, filed this appeal pursuant to Rule 43 Miss.Sup.Ct.R.