## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00255-SCT

*RONALD ADAMS CONTRACTOR, INC.*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHIL B. ABERNETHY |
| | RICHARD M. DYE |
| ATTORNEYS FOR APPELLEE: | JAMES T. METZ |
| | ALAN M. PURDIE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 11/09/2000 |
| MOTION FOR REHEARING FILED: | 12/5/2000; denied 3/1/2001 |
| MANDATE ISSUED: | 3/8/2001 |

### BEFORE PRATHER, C.J., McRAE AND COBB, JJ.

### McRAE, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This case comes before the Court on appeal from summary judgment. A contractor had a contract dispute with the Mississippi Transportation Commission ("Commission") over ambiguities regarding payment for additional work. We have held in the past that ambiguities in a contract are to be construed against the drafter. A genuine issue of material fact sufficient to send this matter before a jury does exist. Therefore, the lower court erred in awarding partial summary judgment to the Commission. Accordingly , we reverse the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.

¶2. On July 15, 1996, Ronald Adams Contractor, Inc. ("Adams") filed a complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against the Mississippi Transportation Commission for damages arising out of a contract between Adams and the Commission for improvements to a portion of United States Highway 45 known as "the Meridian Bypass." Adams alleged that it encountered site conditions on the Highway 45 Project which were different from the site conditions represented in the contract documents prepared by the Commission, that the Commission directed Adams to perform additional work not included in the contract documents, and that the Commission then refused to compensate Adams fully for the additional work it ordered the construction company to perform. Adams's

complaint raised the following causes of action: (1) breach of contract, (2) breach of implied warranty, (3) constructive change to the contract, (4) differing site condition, and (5) material mistake or misrepresentation of fact.

¶3. On August 14, 1998, the Commission filed a motion for partial summary judgment and argued that a special provision of the contract required that, when differing site conditions were encountered, Adams was to provide a written notification to the Commission's engineer prior to performing additional work. The Commission claimed that Adams failed to comply with this written notice provision of the contract. The trial court granted the Commission's motion for partial summary judgment. A motion to reconsider and for additional time filed by Adams was denied by the trial court. A final judgment pursuant to M.R.C.P. 54(b) was entered on February 17, 1999. Feeling aggrieved, Adams appealed.

## STATEMENT OF THE FACTS

¶4. The Commission issued plans and specifications as part of the public bid documents for the U.S. Highway 45 Bypass Project in Meridian, Mississippi. Contractors were invited to submit prices for construction of the project based upon the plans and specifications issued by the Commission. Adams submitted the lowest responsive bid and was awarded a contract by the Commission to construct the project. Adams's contract was for construction of what is known as a "dirt job" or "grading job," requiring Adams to do all grading, drainage, and dirt work necessary to establish the base for the roadway.

¶5. The contract required Adams to "cut" hills and other high areas along where the new roadway would be situated, and to "fill" the valleys or low areas. The plans and drawings issued by the Commission were utilized by Adams in preparing its bid price. The plans, which were incorporated into the contract between the Commission and Adams, specified a "grade line," or grade elevation, throughout the length of the new roadway. In high areas, this grade line dictated the depth to which Adams would need to cut, and the grade line also dictated the amount of material which would be filled to get to the appropriate roadway elevation in the "low" areas.

¶6. The contract included by reference the Mississippi Standard Specifications for Road and Bridge Construction (standard specifications) (1976 ed.), a Special Provision "Differing Site Conditions" clause (S.P. No. 907-104-10), soil borings, profiles, and other special provisions.

¶7. As construction of the project progressed, Adams encountered numerous areas along the proposed roadway where the soil condition at the Commission's designated grade line was unacceptable to the Commission. At each of these locations, the normal operations of Adams would be interrupted and the Commission's engineer would determine how long, wide and deep below the grade line this unacceptable material extended. The engineer would then direct Adams to "undercut" the unsuitable material below the grade line and "backfill" the excavation with suitable material. The Commission recorded these observations and directives in a separate "Field Notebook" specifically documenting the exact length, width, and depth to which the Commission's engineer directed Adams to excavate.

¶8. William Ricky May, the Commission's on-site project engineer, conceded that this process of interrupting the construction activities when unsuitable material was encountered at the grade line significantly impacted Adams's efficiency and cost for performing the work. Despite this impact, the Commission only compensated Adams for every cubic yard of dirt excavated and backfilled below the grade line at the original contract unit cost for standard, large quantity dirt movement. The original contract

provided for three payment items: muck, excess, and unclassified excavation. All undercutting and backfilling was paid as unclassified excavation.

¶9. When the Commission refused to adjust the contract and pay Adams additional compensation for cost and expenses incurred in excavating and backfilling areas below the grade line, Adams filed this lawsuit to recover its additional costs. The Commission moved for partial summary judgment, claiming that it was not required to compensate Adams for the extra work since Adams failed to give a written notice to the Commission prior to performing the extra work not delineated in the contract and since Adams failed to secure a supplemental agreement executed by the full Commission prior to performing the extra work. The Commission's motion was granted by the circuit court.

## STATEMENT OF THE ISSUES

### I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

### II. WHETHER THE TRIAL COURT ERRED IN DENYING RONALD ADAMS'S MOTION TO RECONSIDER AND FOR ADDITIONAL TIME TO CONDUCT DISCOVERY.

## DISCUSSION OF LAW

### I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

¶10. The circuit court's grant of summary judgment is reviewed by this Court de novo. ***Hernandez v. Vickery Chevrolet-Oldsmobile Co.***, 652 So. 2d 179, 181 (Miss. 1995). The Court's review is governed by the same standard used by the circuit court under Rule 56(c) of the Mississippi Rules of Civil Procedure. ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 362 (Miss. 1983). The evidence must be viewed in the light most favorable to the party against whom the motion is made. ***Id.***

¶11. The burden of demonstrating that no genuine issue of material fact exists is on the moving party. ***Id.*** at 368. To defeat a motion for summary judgment, the nonmoving party must make a showing sufficient to establish the existence of the elements essential to his case. ***Id.*** at 362.

¶12. That part of the contract most at issue in this dispute is the "Differing Site Conditions" clause found in Special Provision No. 907-104-10. That clause states, in pertinent part:

Differing site conditions. During the progress of the work, if subsurface or latent physical conditions are encountered at the site differing materially from those indicated in the contract or if unknown physical conditions of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in the work provided for in the contract, are encountered at the site, the party discovering such conditions shall promptly notify the other party in writing of the specific differing conditions before they are disturbed and before the affected work is performed.

Upon written notification by the Contractor, the Engineer will investigate the conditions, and if he/she determines that the conditions materially differ and cause an increase or decrease in the cost or time required for the performance of any work under the contract, an adjustment, excluding loss of

anticipated profits, will be made and the contract modified in writing accordingly, the Engineer will notify the Contractor of his/he determination whether or not an adjustment of the contract is warranted.

No contract adjustment which results in a benefit to the Contractor will be allowed unless the Contractor has provided the required written notice.

¶13. The determinative issues in this case are whether there is a genuine issue of material fact as to (1) whether Adams encountered a "differing site condition," as defined in the contract, thereby triggering Special Provision No. 907-104-10, and (2) whether that provision allows for additional compensation without giving written notice of the differing site conditions to the Commission's engineer where actual notice already exists, and without first securing a written supplemental agreement from the full Commission.

¶14. Adams asserts that the circuit court erred in granting the Commission's motion for partial summary judgment since there was a genuine issue of material fact as to whether a "differing site condition" was encountered on the project. Adams concedes that in order for it to prevail on its claims for additional compensation, it must show that Adams encountered a "differing site condition," as defined by the contract, requiring extra work not contemplated by the original contract. As delineated above, a "differing site condition" is encountered where there are "subsurface or latent physical conditions . . . encountered at the site differing materially from those indicated in the contract," *or* where there are "unknown physical conditions of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in the work provided for in the contract." Adams contends that a genuine issue of material fact exists as to whether the undercutting and backfilling of unsuitable material below the grade line it performed was caused by a "latent physical condition which differed materially from those indicated in the contract," thereby constituting a "differing site condition."

¶15. In support of its argument that there is no genuine issue of material fact as to whether a "differing site condition" was encountered on the project, the Commission introduced the affidavits of William Ricky May, Assistant District Construction Engineer of Operations for the Commission, and Sonny Vance, Assistant District Engineer of Construction for the MDOT. Both men stated that the plans and specifications were adequate for the construction work. Vance also stated that on each project, undercut is normal, usual, and customary and is inherent in dirt or grading work. The Commission concedes that the plans do not indicate that there may be a need to undercut and backfill at the established grade line, but argues that due to the inability to predict the exact areas where unstable material found at the grade line will require undercutting, no undercutting was shown on the plans.

¶16. Although the uncontradicted testimony and affidavits put forth by the Commission established that the necessity for undercutting and backfilling at the grade line is ordinarily encountered and generally recognized as inherent in grading or dirt work, there remains a question of fact as to whether the necessity for undercutting and backfilling on this project was caused by a "subsurface of latent physical condition encountered at the site differing materially from those indicated in the contract." Restated, the fact issue is clear: whether the conditions which required undercutting and backfilling were materially different from those indicated on the contract plans and specifications. Such an issue can be decided only by a jury.

¶17. If a jury were to find that the undercutting and backfilling below the grade line were caused by a "differing site condition," the question then becomes, what does the "Differing Site Conditions" clause require in order for Adams to be compensated for extra work.

¶18. The fact that Adams failed to give written notice of a "differing site condition" to the project engineer or the full Commission is irrelevant, because the clause specifically states that upon the occurrence of a differing site condition, "the party discovering such conditions shall promptly notify the other party in writing of the specific differing site conditions before they are disturbed and before the affected work is performed." The clause, therefore, does not place the burden upon Adams alone to discover the condition and to notify the Commission in writing. Instead, the clause places an equal burden on both parties to discover such conditions and notify the other party of the condition. This Court has addressed such a mutuality requirement:

> Where the state has lawfully entered into a business contract with an individual, **the obligations and duties of the contract should be mutually binding and reciprocal. There is not mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.**

*Churchill v. Pearl River Basin Development Dist.*, 619 So. 2d 900, 903 (Miss. 1993) (citations omitted)(emphasis added). Therefore, the trial court's holding that the provision is not mutually binding was erroneous because it is inconsistent with the *Churchill* rationale.

¶19. The evidence is undisputed that both the Commission's project engineer and Adams knew of the unsuitable material at the grade line each time the condition was encountered. In fact, it was the Commission which determined where the soil conditions at the grade line were acceptable or unacceptable, and it was the Commission which directed Adams to "undercut" and "backfill" below the grade line at certain locations along the roadway base. The Commission's field representative, Walter Lamar Johnson, testified that the **Commission always examined each site before ordering undercutting, that the Commission made the decision on undercutting, and that the Commission recorded the quantity of undercutting for the purposes of measurement and payment.**

¶20. The "Differing Site Conditions" clause specifically states that the purpose for giving written notice of this condition was so that, "the engineer will investigate the conditions." It is therefore clear that the purpose for written notification by the contractor to the Commission is to trigger an investigation by the Commission of the physical conditions at the location. The Commission's engineer investigated the physical conditions at each undercutting location before any work was performed. Although S.P. No. 907-104-10 states that "[n]o contract adjustment which results in a benefit to the Contractor will be allowed unless the Contractor has provided the required written notice," it would have been useless for Adams to give written notice to the Commission of that condition which the Commission was already investigating. In Mississippi, there is a well recognized rule that a person or entity is never required by law to proceed with a vain and useless act. *See Shell Petroleum Corp. v. Yandell*, 172 Miss. 55, 66, 158 So. 787, 790 (1935) (recognizing that a person is not required to do a vain and useless act, such as giving notice of a condition to another party who already had actual notice of the condition). Since the Commission had actual knowledge of the soil conditions, Adams is not barred from recovering damages in the event the jury finds that there was a "differing site condition."

¶21. Once the Commission has received notice of the physical conditions and conducted its investigation, the "Differing Site Conditions" clause states that if the engineer determines that the conditions do materially differ from those shown in the contract, "an adjustment, excluding loss of anticipated profits, will be made and the contract modified in writing accordingly." The section then states that "the engineer will notify the

contractor of his/her determination whether or not an adjustment of the contract is warranted." These two sentences create an ambiguity in the contract as to whether the Commission/engineer must adjust or simply may adjust the contract in the event that there are conditions which materially differ from the plans. This Court has recognized that "[i]t is for the jury to determine what is the agreement of the parties, where there is uncertainty in a written contract because of ambiguity of doubtfulness." ***Baylot v. Habeeb***, 245 Miss. 439, 445, 147 So. 2d 490, 494 (1962).

¶22. The Commission argues that regardless of whether there was a "differing site condition" and whether the contract unequivocally provides for an adjustment of compensation in such a case, summary judgment of Adams's claims was still appropriate since the full Commission did not approve additional compensation or add a special pay item for undercutting and backfilling, and thus cannot be bound for additional compensation.

¶23. The Commission correctly notes that Miss. Code Ann. § 65-1-5 (Supp. 2000) provides that the Commission shall speak only through its minutes. This statute is mandatory rather than merely directory. ***Mississippi State Highway Comm'n v. Sanders***, 269 So. 2d 350, 352 (Miss. 1972). In support of its assertion that summary judgment was appropriately rendered, the Commission points to the affidavit of Linda Ferrell, secretary to the Commission. Her affidavit states in pertinent part: "The minutes of the Commission do not reflect any action of the Commission approving any supplemental agreement to the contract between Ronald Adams, Contractor, Inc., and the Commission, commonly known as State Project No. 96-0002-03-061-10, adding any pay item for rock excavation or any additional item or compensation for extra work caused by the excavation, removal or backfilling of unsuitable sub-surface material or any additional payment for the removal of muck."

¶24. Although the Commission cites several cases in which this Court has held that an employee of the Commission, even acting in his official capacity, has no authority to bind the Commission absent the authority of the Commission appearing on its minutes, those cases are factually distinguishable from the instant case. Here, the contract could be interpreted as allowing the project engineer to authorize additional compensation upon determining that there is a "differing site condition," without a prior written supplemental agreement entered into by the Commission and appearing on its minutes. Part of the "Differing Site Conditions" clause states that **"[t]he Engineer will notify the Contractor of <u>his/her determination</u> whether or not an adjustment of the contract is warranted."** Unlike those cases where we have found that the Commission had not taken action by an appropriate entry on its minutes, it is undisputed here that the full Commission did approve, by an appropriate entry on its minutes, the original contract with Adams which creates the ambiguous language as to whether the Commission delegated authority to the engineer to authorize additional compensation to Adams, if needed. Under Miss. Code Ann. § 65-1-8 (1)(f) (Supp. 2000), the Commission has general powers, duties, and responsibilities "to receive and provide for the expenditure of any funds made available to it by the Legislature . . . ." As there is no statutory provision prohibiting the Commission from delegating its authority to authorize additional compensation to the project engineer, the ambiguity in the contract over the engineer's authority should be resolved by a jury.

¶25. The Commission argues that it is Standard Specifications § 105.17 which applies in this case, and not the "Differing Site Conditions" clause of Special Provision No. 907-104-10. Standard Specification § 105.17 states, in pertinent part:

> Claims for Adjustments and Disputes. It is in the public interest that the Department have early or

prior knowledge of an existing or impending claim of any nature by the Contractor so that the Department may appropriately consider modifying the details of the work or other actions of the Department which might result in mitigation or elimination of the effect of the act or conditions objected to by the Contractor and so that the Department may institute appropriate procedures, as required, to keep strict account of actual costs and to verify, at the time, facts upon which a claim for contract time adjustment is made. Therefore, if in any case the Contractor deems that additional compensation is due for work or materials not clearly covered in the contract or not ordered by the Engineer as Extra Work, of if the Contractor deems that adjustment in the contract time should be made because of any of the reasons provided for in the contract as a basis for an extension of time, the Contractor shall notify the Engineer in writing of an intention to make such claim for additional compensation before beginning the work on which he bases the claim or for such extension of time as soon as the facts first become known on which he bases the claim for adjustment. If such written notification is not given in accordance with these specifications and the Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual costs or verification at the time of facts upon which a claim for contract time adjustment is made, the Contractor hereby agrees that failure to provide written notice has denied the Department the prerogative of making adjustments in the work which might remove or alleviate the conditions for which a claim might be made, and the Contractor further agrees that such failure on his part shall be a conclusive waiver of any claim, or part thereof.

Mere oral notice or statement will not be sufficient, nor will an unnecessarily delayed notice or statement after the event.

¶26. Standard Specification § 105.17 differs from Special Provision 907-104-10 in that § 105.17 requires notice solely in the form of a writing from the contractor to the Commission's engineer prior to the contractor commencing additional work not contemplated by the contract, while there is language in Special Provision No. 907-104-10 which places an equal burden (mutuality requirement) on both parties to notify the other of conditions that would warrant an adjustment in the contract.

¶27. In granting the Commission's motion for partial summary judgment, the trial court relied upon § 105.17. However, this reliance ignores the fact that the special provisions drafted specifically for this contract supercede any conflicting standard specifications. The "Differing Site Conditions" clause of Special Provision No. 907-104-10 is a special provision of the contract which specifically governs the dispute at issue: whether Adams encountered soil conditions different from those indicated by the contract plans, warranting an adjustment in the contract. Standard Specification § 105.17 is a general provision, applicable to all Commission contracts and requests for additional compensation. The contract itself provides in the Notice to Bidders that "[t]he current (1976) Edition of the Standard Specifications for Road and Bridge Construction adopted by the Mississippi State Highway Commission is made a part hereof fully and completely as if it were attached hereto, except where superceded by special provisions . . . ." Furthermore, our law is clear on a relevant aspect of contract interpretation: special provisions inserted in a contract govern over boilerplate provisions. *Estate of Parker v. Dorchak*, 673 So.2d 1379, 1382 (Miss. 1996) (citing *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839 (5th Cir.1983) ); *Forbes v. Columbia Pulp & Paper Co.,* 275 So. 2d 92, 95 (Miss. 1973). Additionally, this Court has also held that "it is a well-known canon of contract construction that ambiguities in a contract are to be construed against the party who drafted the contract." *Mississippi Transportation Comm'n v. Ronald Adams Contractor, Inc.,* 753 So.2d 1077, 1085 (Miss. 2000); *Estate of Parker,* 673 So.2d at 1381-

82 (citing ***Pursue Energy Corp. v. Perkins***, 558 So.2d 349 (Miss.1990)); *see also* [***Theobald v. Nosser***](), 752 So.2d 1036, 1041 (Miss. 1999) ("[A]mbiguous words and terms should be construed against the party who has drafted them; and we accept that, in a case where language of an otherwise enforceable contract is subject to more than one fair reading, we will give that language the reading most favorable to the non-drafting party. ***Leach v. Tingle***, 586 So.2d 799, 801-02 (Miss.1991)."). Therefore, we find that the trial court erroneously relied upon § 105.17 to bar Adams's claim for additional compensation.

¶28. In sum, this Court holds that the trial court erred in granting the Commission's motion for partial summary judgment in that there are genuine issues of material fact as to (1) whether Ronald Adams encountered a "differing site condition," and (2) whether the contract allows the engineer to authorize additional compensation for extra work without written notice and execution of a supplemental agreement by the Commission with entry on its minutes.

### II. WHETHER THE TRIAL COURT ERRED IN DENYING RONALD ADAMS'S MOTION TO RECONSIDER AND FOR ADDITIONAL TIME TO CONDUCT DISCOVERY.

¶29. Because the trial court erroneously granted summary judgment, this Court does not need to address this issue.

### CONCLUSION

¶30. For the foregoing reasons, this Court finds that the trial court erred in granting the Commission's motion for partial summary judgment. Accordingly, the judgment of the Hinds County Circuit Court is reversed, and this case is remanded for further proceedings in accordance with this opinion.

¶31. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS, COBB AND DIAZ, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

SMITH, JUSTICE, DISSENTING:

¶32. The majority concludes that there remains a question of fact as to whether the necessity for undercutting and backfilling on this project was caused by subsurface or latent physical conditions which were materially different from those indicated in the contract. It is my view that it is not a question of fact of whether the undercutting or backfilling is different from that set out in the contract, rather it is a question of whether unknown physical conditions were materially different from those ordinarily encountered in contract work. Moreover, summary judgment on Adams's claims was appropriate since the Commission did not approve additional compensation according to the procedures set out by the Mississippi Legislature and this Court. Accordingly, I respectfully dissent.

¶33. The differing site condition of Special Provision 907-104-10 could have been satisfied by encountering either (1) subsurface or latent physical conditions which were materially different from those indicated in the

contract or (2) unknown physical conditions of an unusual nature which were materially different from those ordinarily encountered and generally recognized as inherent in the contract work. The undisputed sworn testimony in the record indicates the impossibility of meeting the first prong of the differing site condition provision. Due to the inability to predict the exact areas where unstable materials found at grade line will require undercutting, no undercutting is shown on plans for dirt or grading jobs. In short, the conditions of the materials which will be found at grade line are simply not indicated at all on plans for dirt work and were not indicated in the subject contract between Adams and the Commission. It thus follows that subsurface materials cannot differ materially from those indicated in the contract when the contract does not indicate in the first instance what type of materials will be found at the grade line. There being no genuine issue of material fact, as a matter of law, Adams could not have encountered differing site conditions pursuant to the first prong of Special Provision 907-104-10.

¶34. The majority indicates that there is a genuine issue of material fact as to the first prong. I disagree, focusing instead on the second prong where the briefs are unclear. As for the second prong of Special Provision 907-104-10, I think that there remains a question of fact as to whether unknown physical conditions of an unusual nature were materially different from those ordinarily encountered and inherent in contract work. Such an issue should be decided be a jury.

¶35. The Commission argues that summary judgment on Adams's claims was appropriate since the full Commission did not approve additional compensation or add a special pay item for undercutting and backfilling, and thus cannot be compensated for additional compensation. I agree with the Commission. The Commission correctly notes that being a creature of statute, the Commission has no power outside that granted by the Legislature. Miss. Code Ann. § 65-1-8 (Supp. 2000). Section 65-1-5 provides that the Commission shall speak only through its minutes, stating in pertinent part:

> The Mississippi Transportation Commission shall act as a legal entity, and shall *only speak through its minutes, and in all matters shall act as a unit. Any action on the part of any member of the commission separately shall not bind the commission as a unit*, but such individual member only shall be liable personally on his official bond.

Miss. Code Ann. § 65-1-5 (Supp. 2000) (emphasis added). The provisions of this statute are mandatory, rather than merely directory. *Mississippi State Highway Comm'n v. Sanders*, 269 So.2d 350, 352 (Miss. 1972) (citing *Pearl Realty Co. v. State Highway Comm'n*, 170 Miss. 103, 115, 154 So. 292, 294 (1934). More specifically, this Court has held absent affirmative action taken by an appropriate entry on its minutes, a public body cannot be bound by a contract. *Sanders*, 269 So.2d at 351.

¶36. Regarding public contracts, "where a particular manner of contracting is prescribed, the manner is the measure of power, and must be followed to create a valid contract." *Bruner v. University of S. Miss.*, 501 So.2d 1113, 1115 (Miss. 1987). Clearly, the manner of contracting prescribed for the Commission is by entry on its minutes. Miss. Code Ann. § 65-1-5.

¶37. It has long been the law of this state that one contracting with the Commission or other public board is not only charged with notice that the Commission's or board's authority to contract must be found in order appearing on the entity's minutes, but is also responsible for seeing that the contract is legal and properly recorded on such minutes. *See Bruner*, 501 So.2d at 1115 (citing *Thompson v. Jones County Community Hosp.*, 352 So.2d 795, 797 (Miss. 1997)); *Pearl Realty Co.*, 170 Miss at 114-16, 154 So. at 294-95.

¶38. Assuming that Adams's contract was modified to provide for additional compensation, it is undisputed that no modification of that contract to provide additional compensation to Adams for rock, muck, or undercut was entered on the Commission's minutes. As discussed herein above, without an appropriate entry on its minutes, the Commission cannot be bound by this phantom contract. Moreover, there is no other means to ratify this assumed contract modification for additional compensation. *Pearl Realty Co.*, 170 Miss. at 116, 154 So. at 295. It is undisputed by Adams that there was no Commission approval, advance or after the fact, of the purported contract modifications. Therefore, since Adams's contract was not validly modified, the Commission is not bound to pay additional compensation.

¶39. Therefore, I respectfully dissent.