SOUTHWICK, P.J.,
for the Court.
¶ 1. J.C. Penney Life Insurance Company filed a complaint for interpleader against various parties to determine the proper beneficiary of a life insurance policy purchased by Kevin Brown. The Chancery Court of Montgomery County determined that the parents of the deceased were the proper beneficiaries. Another party, the girlfriend of the deceased, appeals arguing that the chancery court erred as a matter of law. We disagree and affirm.
STATEMENT OF FACTS
¶ 2. On July 31, 1998, Kevin Brown purchased accidental death and dismemberment insurance from J.C. Penney Card Bank, N.A., which was providing group accidental death and dismemberment coverage under a policy issued by J.C. Penney Life Insurance Company. Brown was offered the insurance by virtue of his being the holder of a J.C. Penney credit card.
¶ 3. Brown purchased his' policy through a telephone solicitation. He was given no written application, but a transcript of the recording of the telephone solicitation was prepared.
Agent: With your permission, I’d like to record our conversation just to avoid errors in processing. Would that be all right?
Brown: That’ll be fine.
Agent: You’ve decided to enroll your wife and yourself in our million dollar group insurance plan. Is that correct?
Brown: That’s right.
Agent: J.C. Penney is paying the premium on the coverage for the first three *1276 months, after that if you decide to continue, the premium of nine dollars and ninety-five cents would be billed to your monthly statement. Is that the way you understand it?
Brown: That’s fine.
Agent You’ll receive your certificate of insurance in about 7 to 10 days. Your coverage will become effective on the date shown. If you decide to cancel just call or write to J.C. Penney insurance.
[[Image here]]
Agent: Okay. And your wife’s name is spelled SHABODKA?
Brown: Uh uh.
Agent: - Last name is M C E U T T? Brown: Uh uh. McEutt.
Agent: And her date of birth is December 25th 1979?
Brown: Uh that’s correct.
¶ 4. Shavodka McNutt’s name was misspelled in the transcript. However, all parties accept that the appellant McNutt is the person whom Brown was referencing. The transcript indicates that the agent asked Brown if he wished to “enroll your wife and yourself in our million dollar group insurance plan,” and Brown said that he did. What it meant for Brown’s “wife” to be enrolled under the plan will be discussed below. The “million dollars” was the benefit level if Brown were killed in a common carrier accident. A death in an automobile accident would pay $100,000 in benefits.
¶ 5. On October 3, 1998, barely two months after the insurance was purchased, Kevin Brown was killed in an automobile accident. On October 15, 1998, Brenda Brown, Kevin Brown’s mother, notified J.C. Penney of her son’s death. J.C. Penney sent her the appropriate claim forms, which she completed and returned. On December 6, 1998, J.C. Penney informed Mrs. Brown that she would need to obtain a notarized statement from McNutt stating that she had never been married to Kevin Brown in order for the life insurance proceeds to be disbursed.
¶ 6. On December 28, 1998, Verlinda McNutt, Shavodka McNutt’s mother, informed J.C. Penney that the notarized statement would not be provided. Both Brown and McNutt hired legal counsel.
¶ 7. On April 16, 1999, J.C. Penney filed a complaint for interpleader. Shavodka McNutt, Brenda Joyce Brown, and Dor-lyan Monroe Brown were named as defendants. The complaint stated that the certificate of insurance provided that upon the death of the insured that benefits would “be paid to the insured’s spouse, if living ... otherwise, equally to [the insured’s] then living parents or parent....”»Because Kevin Brown had named McNutt as his wife but affidavits had been provided stating that Kevin Brown was never married, J.C. Penney stated that it was uncertain to whom it should pay the life insurance benefits. J.C. Penney deposited into the registry of the chancery court the sum of $101,816.66, representing the insurance proceeds of $100;000 plus accrued interest. J.C. Penney was dismissed from the action on November 12, 1999. No claims are made on this appeal by the remaining parties against J.C. Penney.
¶ 8. The chancery court held a one day trial on November 23, 1999. Three witnesses testified in person and the depositions of two others were introduced. Kevin Brown’s mother testified that her son had not been engaged nor married, and that he had no children. Mrs. Brown also testified that she recalled her son’s receiving in the mail the insurance certificate prior to his death. Dorlyan Brown, Kevin Brown’s father, testified that his son did not have any children and that the Browns opened an estate for Kevin Brown after his death.
*1277 ¶ 9. The Browns also offered the deposition testimony of James K. Rydberg, a J.C. Penney Life Insurance Company employee. Rydberg explained the solicitation process. It began with a phone call from a representative, using information taken from J.C. Penney credit card accounts. The caller would briefly describe the coverage provided by the insurance policy and then ask if the individual was interested in obtaining coverage. If the individual expressed an interest, an actual insurance agent would get on the telephone to sell the policy. The initial portion of the solicitation which was conducted by the representative was not recorded.
¶ 10. Rydberg further testified that because the policy was sold over the phone, that a beneficiary statement was not taken. The purchaser was not asked to designate beneficiaries and instead the standard policy designation was automatically applied. There was in fact no record that Kevin Brown was asked to designate a beneficiary at the time of the solicitation or later through the change process. No record was made of what was discussed between Kevin Brown and the J.C. Penney representative prior to the recorded portion of the telephone solicitation. According to Rydberg, the telephone solicitation was the application for the insurance. The purpose of recording the solicitation was to verify the sale in the event an insured questioned being billed for the insurance or disputed what was represented to the insured during the sale.
¶ 11. The transcript revealed that Kevin Brown named McNutt when asked for his wife’s name. Rydberg testified that the purpose of asking for the wife’s name was to determine those persons to be covered by the insurance policy in addition to the insured. Individuals other than the cardholder would have insurance coverage only if they were a spouse or child of the principal named insured.
¶ 12. After Brown’s death, McNutt sent a claim form to J.C. Penney listing her relationship to the deceased as “close friend.” McNutt testified that she had known Kevin Brown since 1995 and that their relationship became more serious in May of 1998. McNutt testified that Brown visited her often at a clothing store owned by her mother, would sometimes bring her lunch, and that she saw Brown every day in the summer of 1998 at the park where he was playing baseball. McNutt testified that Brown told her about his desire to enter college or the military and that if he entered the military and got settled, that he would like for her to be with him. McNutt testified that she and Brown discussed marriage two or three times in June 1998.
¶ 13. McNutt testified that Kevin Brown purchased her clothes using his J.C. Penney credit card and that she would later pay half the cost. Brown called her on July 31, 1998 and asked her for her birthday. Afterwards he told her that he had taken out an insurance policy but did not tell her in what capacity he had named her under the insurance policy. McNutt testified that Brown also told her that it would be fair for her to be included under the insurance policy because they were to share the credit card bill. McNutt testified that she and Brown were married in “heart, mind, and soul” although she and Brown never held themselves out to the community as man and wife. McNutt also testified that she was aware that on the night Brown was killed in the automobile accident that another woman was in the car with him.
¶ 14. Lakeshia White, a friend of McNutt’s, testified by deposition that Kevin Brown and McNutt became close friends in 1997. Brown and McNutt were *1278 often together and showed affection towards one another. Brown told McNutt in White’s presence that he had taken out insurance on McNutt because of the way she drove. White testified that Brown told McNutt that if something were to happen to him that McNutt would live well afterwards, and the reverse would be true as well. White questioned Brown about his seeing another girl. Brown denied that he was doing so and asserted that he and McNutt would get married.
¶ 15. On July 21, 2000, the chancellor issued his opinion. The chancellor made these findings of fact and conclusions of law:
(A) If there is an ambiguity in the terms of a policy of insurance, then the Court must look to the intention of the parties, based on what a reasonable person placed in the insured’s position would have understood the terms to be. J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So.2d 550, 552 (Miss.1998)....
(B) If there is an ambiguity in regard to changing beneficiaries, then Mississippi Courts look to the intent of the insured and apply a “substantial compliance” rule rather than a strict adherence to the requirements of the policy concerning changing beneficiaries. Bell v. Parker, 563 So.2d 594, 598 (Miss.1990) states that “under this rule, where an insured evidences an intent to change beneficiaries, and does all (s)he can do to comply with the requirements of the policy, substantial compliance will be found and the change of beneficiaries will be upheld.”
(C) In this case, the fact that Kevin Brown named his girlfriend “Shavodka McEutt” as his “spouse” does not create an ambiguity in regard to the beneficiary. Any reasonable person would construe this to mean that he intended her to be the beneficiary if and when he married her and she became his spouse. The clear language of the policy is controlling and his parents, Brenda Joyce Brown and Dorylan Monroe Brown are entitled to all the interpled funds.
(D)If Kevin Brown intended his girlfriend to be his beneficiary even before they married, then the second requirement of the Bell case has not been met. He did nothing at all to change the beneficiary. He could have married his girlfriend, but he didn’t. He could have complied with the provisions for changing the beneficiary, but he didn’t. He could have even called and orally requested that the beneficiary be changed, but he didn’t.
¶ 16. The chancellor found that the Browns, the parents of the deceased, were entitled to the insurance benefits. McNutt has appealed.
DISCUSSION
¶ 17. This suit raises simply a matter of construction of an insurance contract. To the extent the chancellor had to resolve disputed issues of fact, we review whether the resolution was clearly erroneous. To the extent the chancellor had to interpret the law, including the legal effect of contract terms, we examine those legal issues de novo. Zeman v. Stanford, 789 So.2d 798, 801-02 (Miss.2001); Cherry Bark Builders v. Wagner, 781 So.2d 919, 921 (Miss.Ct.App.2001).
¶ 18. The sole issue in this case is to whom the proceeds of the life insurance policy are to be paid. A policy of insurance is a contract. “Initially, in interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reason *1279 able overall result.” J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So.2d 550, 552 (Miss.1998). “The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standard. A court must effect a determination of the language used, not the ascertainment of some possible but unexpressed intent of the parties.” Gulfside Casino Partnership v. Mississippi State Port Authority at Gulfport, 757 So.2d 250, 257 (Miss.2000). The chancellor found that the policy was unambiguous and provided for the parents of the unmarried Brown to receive the benefits.
¶ 19. We begin by looking at the insurance policy as a whole, though the actual policy is not before us. The parties submitted only a certificate of insurance issued to Kevin Brown. The certificate stated that “it is not part of the policy but it is evidence of the insurance provided under the policy. The policy and any attachments form the entire contract of insurance.” No party has argued that more evidence of the insurance policy itself is needed, so we too rely on the certificate.
¶ 20. The certificate of insurance contained only one provision dealing with a misrepresentation during the application process. It dealt with a misstatement of the insured’s age. The certificate thus provides no guidance as to the consequences of the misrepresentation by the insured of his relationship with McNutt. Even if the certificate contained such a provision, J.C. Penney never contested its liability under the policy.
¶21. The certificate of insurance contains an unambiguous provision as to whom benefits are to be paid and in what order of preference. The beneficiary provision is this:
[a]ll benefits are payable to you, if living. Unless you specify otherwise, any other benefit due for loss of life will be paid as follows:
(1) at your death, it will be paid to your spouse, if living, otherwise, equally to your then living lawful children, if any, including stepchildren and adopted children; otherwise, equally to your then living parents or parent; otherwise to your estate.
(2) at the death of any other covered person, it will be paid to you, if living; otherwise, as though it were payable under (1) above.
The certificate also contains a provision describing the process to change beneficiaries:
You may change the beneficiary at any time by writing us at 2700 West Plano Parkway, Plano, Texas, or to the policyholder. Once we record the change, it will take effect as of the day you sign the request, subject to any claim payment made before such recording. A consent of the beneficiary is not needed for change, unless the beneficiary designation was irrevocable.
¶ 22. In addition to the beneficiary and the change of beneficiary provisions, there are two other provisions that should be considered. The first provision concerns coverage for an insured’s spouse in the event of the insured’s death or divorce from the insured. The certificate of insurance states that
[i]n the event of your death, your covered spouse, if any, shall be deemed the Insured. Otherwise, coverage will terminate on the next renewal date. If your spouse ceases to be your spouse for reasons other than your death your spouse will no longer be covered as of the next monthly renewal date.
¶23. The second provision concerns “covered persons.” “Covered person means, for coverage purposes only, you *1280 and the following persons, provided coverage has become effective: (1) your spouse; and (2) each of your children ..., and (3) your unmarried child.... ”
¶ 24. At the death of the insured, benefits will be paid to these persons in this order unless the insured specified otherwise. The insured has essentially unfettered discretion to designate the primary beneficiary. Unlike the “covered persons” provision, which addresses who is insured under the policy, the change of beneficiary provision contains no limitation as to who may qualify as a beneficiary. In fact, the certificate of insurance would permit the insured to name someone other than a spouse as the primary beneficiary.
¶ 25. How much if any of this was explained to Brown prior to the transcribed portion of the phone call is unknown. The parties put on the evidence that they had, and the chancellor decided the effect of the evidence. There was no evidence that Brown told J.C. Penney that he wished McNutt to be his primary beneficiary. The evidence suggests that Brown was never asked to name a beneficiary. It is unknown whether the insurance agent explained who the standard beneficiaries were. We do know that Brown gave details to J.C. Penney’s agent as to the name and birth date of his “wife,” but that explicitly was only so that she could be a covered person under the policy. Though there was some evidence that Brown told others that he wished for McNutt to be the beneficiary, there is no evidence that he so informed J.C. Penney. He may well have been attempting to make certain McNutt qualified as a covered person.
¶ 26. Whatever Brown was attempting to do, McNutt would become the beneficiary under this policy only if she were his actual spouse or else Brown specifically designated her as his beneficiary. All he ever did was specifically designate her as his wife. The certificate of insurance itself contemplates that the initially named spouse will lose her rights to be a covered person and also to be the primary beneficiary if there is a divorce. We find nothing illogical or unreasonable about the chancellor’s determination that the reverse also holds true. By that, we mean that absent a specific designation of McNutt as the beneficiary, her simple description as Brown’s wife’s just announces a potential and puts J.C. Penney on notice of her. Unless she became Brown’s wife, she had no rights under the policy.
¶ 27. Regardless of what may or may not have been said over the telephone prior to the transcribed portion that is in the record, what finally resolves this dispute is that after the telephone solicitation and before Brown’s death, he received the certificate of insurance in the mail. Brown had at least constructive knowledge of the certificate’s provisions. Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987) (“Even if [insureds] had not [read the entire insurance policy], knowledge of its contents would be imputed to them as a matter of law.”) Therefore, Kevin Brown had knowledge of the beneficiary provision which clearly states that “unless you specify otherwise” benefits are payable to the insured’s parents if at the time of death he has no spouse or children.
¶ 28. We find that Brown’s erroneous naming of McNutt as his spouse was not an explicit or even reasonably clear designation of McNutt as his beneficiary. The certificate of insurance provisions remained unchanged by an alternative designation. Brown’s parents were properly found to be entitled to the proceeds of the policy.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF MONTGOMERY COUNTY IS AFFIRMED. ALL *1281 COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ, CONCUR.